### DAVID S. WILDS,

*vs.*

### THOMAS ATTIX and WILLIAM WILDS, Sheriff.

*Kent, Sept., T. 1871.*

Under the law of suretyship, the creditor is not bound to active diligence
against the principal, and he does not lose his remedy against the surety
even by refusing upon request of the latter to pursue the principal though
the principal afterwards becomes insolvent.

There is no general equity of a surety to throw upon the creditor the burden of enforcing performance of the contract by the principal or to compel the creditor to undertake a law suit. It is only on special grounds that equity will interfere with the creditor's election between his double remedy against the principal and surety, as when the principal becomes bankrupt the creditor may be compelled to prove his debt or where the creditor holds a collateral security which is available to him but which he could not make so to the surety by assignment, he may be compelled first to resort to that security.

In order to make the promise of the creditor to the, surety to proceed against the principal debtor, operate as a constructive fraud, it must appear that the surety was actually induced by it to forego some advantage or remedy which otherwise he would have taken.

The doctrine of equitable estoppel proceeds upon the ground of adjusting between two innocent parties a loss which one of them must bear, upon the equitable consideration that it should fall upon him through whose act, admission or silence, when it was his duty to speak, it has resulted.

INJUNCTION BILL. MOTION TO DISMISS.—This cause came before the Chancellor upon a motion to dismiss the bill for want of equity and to dissolve the injunction.

The case made by the bill was as follows :—The complainant David S. Wilds became surety for one Joseph E. Williams in a judgment bond to the defendant Thomas Attix for $500.00 dated March 16, 1866, Attix being, as alleged, cognizant of the fact that the complainant was surety only. At the time this bond was given Williams was a merchant in Smyrna. Afterwards, in October, 1867, he removed to Kenton, where he transacted business as a merchant for about six months and then returned to Smyrna and resumed his mercantile business. About this time, viz. in April 1868, rumors of his insolvency began to prevail, to which the complainant gave no heed because he had previously been assured by Williams that he had paid off this bond. Soon after these rumors arose, Attix in a conversation with the complainant drew his attention to them, and in the course of the conversation the complainant inquired whether the bond had been taken

up and was informed that the interest had been paid, but no part of the principal. The complainant thereupon requested Attix either to enter a judgment against Williams on the bond or to let the complainant do it,—at the same time stating that Williams had in the month of February preceding purchased a farm from Timothy Carrow and that there was then no lien against the farm except a mortgage against Carrow and wife. To this request Attix, as the bill alleges, "immediately and unhesitatingly and " without any qualification replied that he would enter the " said bond for the complainant's accommodation :— * * " that he would go down to Dover the following Monday or " Tuesday" (the conversation taking place on a Saturday) " and have the business attended to." This promise Attix did not fulfil.

At the time of this conversation Williams held the farm purchased from Carrow. The bill alleges that Williams bought it for $4,000, that the farm was worth that sum, and that the only lien against it at the time of the promise by Attix was the mortgage of Williams and wife to Mason Bailey for $2,000 with interest from January 5, 1864. The complainant relying on the promise of Attix to enter judgment on the bond and considering himself safe in that event, took no further concern about the matter until the fall of 1868, some six months after the conversation, when hearing that Williams' business had been closed by the Sheriff and desiring to feel more assured he called upon Attix to inquire as to his having entered the judgment and was then informed that he had not done so,—that he, Attix, had been influenced by Williams,representations to consider the rumors of his insolvency as false and the entry of judgment unnecessary. Attix indicated his readiness then, should the complainant so desire to enter the judgment ; but the complainant considered it too late to make the debt out of Williams' property as during the interval between these two conversations

with Attix, judgments had been entered against Williams to the amount of $3554.90, exclusive of interest and costs, making with the Bailey mortgage an amount of liens against the farm far exceeding its value. The complainant therefore made no further effort and rested upon the belief that he was absolved from liability as Williams's surety by the failure of Attix to enter judgment according to his promise.

In September, 1869, the farm was sold in execution of a judgment on the Bailey mortgage and brought only $2,400 a sum very little more than sufficient to satisfy the mortgage debt, with the interest and costs. The farm sold much below its alleged value and the proceeds actually realized would not have covered the debt of Williams even had judgment been entered on the bond according to the promise of Attix. Nevertheless, the complainant alleges that had Attix entered the judgment so as to have made it the next lien after the Bailey mortgage, he, the complainant, would have attended the sale and bid for the farm a sufficient sum to have covered both the Bailey mortgage, and the debt of Williams, and that thereby he would have indemnified himself; that he was deprived of this means of protection in his suretyship by the failure of Attix to comply with his promise and therefore the complainant insists that it would operate as a constructive fraud on the part of Attix to enforce the complainant's liability as surety for this debt. This is the ground of equity for relief by injunction to restrain the collection of the debt as against the complainant.

*Reed*, for the defendant.

The motion to dismiss the bill rests on two grounds :—

1. Voluntary forbearance not binding on the creditor does not discharge the surety. *Vilas vs. Jones*, 10 *Pai.* 76; *Creath's Adm'r. vs. Sims*, 5 *How.* 192 ; *Rees vs. Berrington*, 2 *L. Cas. in Eq.* 361.

2. It is the surety's duty as well as the principal's to discharge an obligation.  *Tudor vs. Goodlue*, 1 *B. Mon.* 323 ; *Gibbs vs. Mennard,* 6 *Pai.* 258 ; *Stringfellow vs. Williams*, 6 *Dana* 236 ; *Jordan vs. Trumbo,* 6 *G. & J.* 103 ; *Ad. Eq.* 269 *and note.*

The surety's only remedy was to pay the debt and take an assignment.

The allegations of request to enter judgment and promise to do so are denied by the answer and there is no evidence.

Sureties are relieved only by an act of the principal obstructing the surety's remedy without his consent.

This promise was without consideration ; and no such promise can be of any effect or at least there must appear to have been a wilful attempt to mislead, or a promise not to look to complainant.

*Comegys,* for the complainant.

I admit that the defendant was not bound to enter judgment.   The creditor is not bound to active diligence. But an equity arises out of defendant's promise, which if performed would have secured the complainant, and complainant's reasonable reliance on this promise.   The surety being lulled into security by the promise, the defendant was bound by it, though he was not bound to make it, and need not have made it.   The omission makes a case of constructive fraud though not a question of wilfulness. 1 *Sto. Eq. Jur. Sec.* 325.   It matters not that the promise was without consideration.

THE CHANCELLOR :—

It was frankly admitted by the complainant's solicitor that, under the law of suretyship, the creditor is not bound to active diligence against the principal and that he does not lose his remedy against the surety even by

refusing upon request of the latter to pursue the principal although the principal afterwards become insolvent. Such must be taken as settled law although there have been some decisions to the contrary. The decisions here referred to are those which have followed *Pain vs. Packard*, 13 *Johns*. 174. In that case the Supreme Court of New York held it to be the duty of the creditor at the surety's request to sue the principal if then solvent and that the surety would be discharged by the creditor's refusal in the event that the principal should afterwards become insolvent. This decision proceeded upon the ground more fully explained by C. J. Spencer in the subsequent case of *King vs. Baldwin*, 17 *Johns*. 386, that inasmuch as a court of equity will on a bill filed by the surety compel the creditor to proceed against the principal thus recognizing the obligation of the creditor first to exhaust his remedy against the principal and as the relations of principal and surety should be the same in both jurisdictions, a court of law ought to enforce the like obligation by holding the refusal of the creditor a valid defense. But there is not, as this argument assumes, any general equity of the surety, to throw upon the creditor the burthen of enforcing performance of the contract by the principal, or to compel the creditor to incur the expense and vexation of a law suit for the benefit of a party who is himself in default. It is only on special grounds that equity will interfere with the creditor's election between his double remedy, as where the principal becomes bankrupt the creditor will be compelled to prove the debt under a commission of bankruptcy, and so where the creditor holds a collateral security which is available to him but which he could not make so to the surety by assignment, he may be compelled first to resort to such security ; but even in these special cases the surety will be required first to indemnify the creditor against the risk, delay and expense. *Hays vs. Ward* 4 *John. Ch. R.* 130 and cases cited. The equity in question is not to be con-

founded with the unquestionable right of the surety to proceed in equity after the debt is due *against the principal* for indemnity. *Ranelaugh vs. Hayes* 1 *Vern.* 190 ; *Antrobus vs. Davidson*, 3 *Mer.* 568.

. . Chancellor Kent, in *King vs. Baldwin*, 2 *John. Ch.* 562, does affirm broadly the equity of the surety, at any time after the debt is due, to compel the creditor to collect the debt citing as authorities Lord Thurlow in *Nisbet vs. Smith*, 2 *Bro. C. C.* (582) and Lord Loughborough, in *Rees vs. Berrington*, 2 *Ves. J.* 543. The remark of Lord Thurlow, however, has since been held as alluding only to the surety's equity under special circumstances. See the note (5) in Perkins Ed'n. of Brown. The remark of Lord Loughborough, which is wholly extra judicial, is the only one in the English cases affirming in general terms, the surety's equity to compel a collection of the debt out of the principal. Lord Loughborough's broad statement of it is not, however, reconcilable with the more cautious qualification of it when stated by other judges, who have uniformly rested the equity upon special grounds, as by Lord Eldon, in *Wright vs. Simpson*, 6 *Ves.* 734. In *Hays vs. Ward*, 4 *Johns. Ch.* 131, which was subsequent to *King vs. Baldwin.* Chancellor Kent upon a full examination of the question, concludes that there is not in the English law, as there was under the civil law, any *general* rule requiring that upon the surety's request the debtor be first sued and in that case he compelled a creditor to resort first to a collateral security on the special ground that it would not be available to the security by assignment on his paying the debt.

It seems then that *Pain vs. Packard* is not supported by the ground assumed for it ; and it must be considered as obnoxious to the objection that it incorporates a new term in the contract of the surety. The rule of that case was affirmed in the Court of Errors and Appeals of New York in *King vs. Baldwin* 17 *Johns.* 386. But this was by

the casting vote of the President of the Senate, a layman against the opinion of Chancellor Kent in the same case when it was before him, 2 *Johns. Ch. R.* 554, and also against the opinions of the most distinguished lawyers of that State then sitting as Senators in the Court of Appeals. Ch. J. Spencer who delivered the judgment in the case of *Pain vs. Packard* adhered to that decision in *King vs. Baldwin*; but two of the other judges who had concurred with him in the former case and who also sat in the latter case, Yates and Platt, J. J., acknowledged their error. The New York Courts while submitting to *King vs. Baldwin* as a decision of the Court of last resort, have treated it with marked disfavor and applied its principle with extreme strictness and with the qualification that the refusal of the creditor to proceed against the principal shall discharge the surety only where actual injury has resulted from it, to be shewn by proving that the principal was solvent at the time of the request and has subsequently become insolvent. With this qualification, the rule of *Pain vs. Packard* has been followed. *Warner vs. Beardsley*, 8 *Wend.* 194 ; *Herrick vs. Borst*, 4 *Hill* 650. It has also been followed in some of the other States. *Cope vs. Smith*, 8 *S.& R.* 110 ; *Hancock vs. Bryant*, 2 *Yerger* 476 ; *Laing vs. Brevard*, 3 *Strob. Eq.* 59 ; *Bruce vs. Edwards*, 1 *Stew* 11 ; *Goodman vs. Griffith*, 3 *Ib.* 168. The courts of Pennsylvania have imposed the additional qualification that the surety must when making the request give notice that he will consider himself discharged if it be not complied with. But in most of the States the whole doctrine is rejected as unsound in principle. *Hubbard vs. Davis*, 1 *Aiken* 296 ; *Montpelier Bank vs. Dixon*, 4 *Vt.* 599 ; *Page vs. Webster*, 15 *Me.* 269 ; *Mahurin vs. Pearson*, 8 *N. H.* 539 ; *Bull vs. Allen* 19 *Conn.* 101 ; *Pintard vs. Davis*, 1 *Spencer* 205 ; *Broughton vs. Duval*, 3 *Call* 61 ; *Dennis vs. Rider*, 2 *McLean* 451 ; *Jenkins vs. Clark*, 7 *Hammond* 72. See at large *Rees vs. Berrington*, 2 *Lead. Cas. in Eq.* 707. In some States the rule of *Pain vs.*

*Packard* has been enacted by the Legislature. The policy of such enactments is not a subject for consideration here.

But the equity to relief in this case is sought to be raised out of the neglect of Attix, the creditor, to fulfill a promise made to the surety on his request, that a judgment should be entered on the bond, by means of which judgment, had it been entered as promised, the surety alleges that he could have protected himself.

Now it is quite clear that this promise by Attix had no force of a contract, such, to shew what I mean, as would have sustained a bill in equity for specific performance or an action at law for damages upon a breach of it. For it was a promise, wholly without consideration. It is therefore clear that this is not a case for relief as for the breach by Attix of any general duty resulting from his relations to the complainant as surety for the debt nor for a breach of a contract. We must then look for some other ground of relief. The complainant's counsel sought to find it by putting the case as one of constructive fraud, arguing that although the promise of Attix was without consideration, yet, that having led complainant to rely upon that means of protection, without giving himself any further concern and having disappointed him in it the attempt afterwards to hold the surety liable, is a constructive fraud. But in order to make the breach of such promise operate as a constructive fraud it must appear that the surety was induced by it to forego some advantage or remedy which otherwise he would have taken. It is not sufficient for this purpose to suppose that but for the promise he might have resorted to some other mode of indemnifying himself. It must appear that in consequence of the promise he did in fact alter his line of conduct to his injury.

The class of constructive frauds within which alone a case of this nature could be brought, is that in which one party has been misled to his prejudice by some

admission, statement, acquiescence, or, as in this case, by a promise of the other party touching the subject-matter in controversy. In such case any claim of that party by whom the other has been so misled, inconsistent with such act, admisssion or acquiescence, is held to be a fraud, and that, too, irrespective of any corrupt purpose to mislead ; it being in the absence of any such purpose termed constructive fraud.

The rule is in the text books sometimes stated as if the intention of the party misleading were material. But upon principle this cannot be. For the doctrine of equitable estoppel proceeds not upon the ground of premising fraud or deceit, but rather. of adjusting between two parties a loss which one or the other must bear, upon the equitable consideration that it should fall upon him through whose act, admission or silence, in a case wherein it was a duty to speak, it has resulted. In such cases, equity acting upon the conscience of the party in default, restrains him from asserting the claim in question, however well founded it may be otherwise. This doctrine of equitable estoppel for the prevention of fraud has been much favored for its wholesome tendency to promote good faith and fair dealing, and it is now applied in courts of law as well as in equity. Nevertheless, in as much as this kind of relief interferes with what is a *prima facie* legal right or title of the party restrained, it is administered only in favor of one who has been actually misled through the act, admission, silence, or as in this case, by the promise of another, *i. e.,* one who has been induced to alter his line of conduct, with respect to the subject-matter in controversy, so as to have subjected himself to some liability, he would not otherwise have incurred, or to have foregone some right or remedy which he otherwise would have taken. But where the party has not been so misled, and the transaction remains wholly unaffected, leading to the same results as.if the acts or silence complained of had

not occurred, then no such injury has been sustained as will afford a ground for relief. This qualification of the doctrine of equitable estoppel or, as it is sometimes called, estopped *in pais*, will be found to be well established. 1 *Sto. Eq. Jur. Sec.* 386 ; *Dazell vs. Odell*, 3 *Hill* 219 ; *Walters vs. Truesdell*, 6 *Pick.* 457 ; 2 *Smith's Lead. Cas.* 466, at large.

Now the complainant's case is defective in not shewing that, as a consequence of the promise of Attix, he altered his condition, by waiving some protection or remedy through which otherwise he would have secured himself ; as if he had been ready to pay the debt and take an assignment or to proceed in equity to compel its immediate collection out of the principal and had been induced by the promise of Attix to forego these or some other means of indemnity.

It is true the bill alleges that but for the omission of Attix to enter the judgment the complainant would have attended the sale of Williams' farm and bid it up to a figure sufficient to cover his judgment, supposing it to have been made a lien next after the Bailey mortgage. But without stopping to enquire what such an opportunity for indemnifying himself would have been worth, it is enough to. say that the loss of it to this complainant was not a consequence of the promise of Attix or of any reliance of the complainant upon it. It is simply the same result to which the transaction would have come had no promise been made, that is no judgment would have been entered by Attix against Williams, the subsequent liens would have intervened and the property of Williams would have been sold without paying this debt. To entitle the complainant to relief it is not enough to show that he had suffered loss in consequence of the creditor's omitting to enter the judgment ; but he must connect his loss with the promise of Attix, showing that, but for that promise and his reliance upon it, he would have adopted,—not that

he had it in his power to adopt but he would *have adopted*, —some other means of protecting himself. As this does not appear from the case made, I cannot declare that the complainant has been misled by the promise of Attix to his injury. It is not therefore a case of constructive fraud upon the surety such as to warrant the Court in interfering with the creditor's full legal remedy upon the bond.