## LEVI H. MILLER

*vs.*

## EMANUEL J. STOUT, HENRY TODD, and WILLIAM A. ATKINSON.

Kent, Sept. T. 1878.

*Subrogation, essentials and enforcement of ; no subrogation where no equity.*

1. When a surety pays a debt of his principal, or the debt is paid out of the proceeds of the sale of the surety's property, equity substitutes such surety in the place of the creditor, without any special agreement to that effect.

2. Subrogation, being a creature of equity, does not rest in contract, but is an equity resulting from the circumstances of the particular case. It is enforceable in equity tribunals, because it is a matter of conscience.

3. Upon the performance, by the surety, of his contract of suretyship, he is entitled to the original evidences of debt held by the creditor, and to any judgment into which the debt has been merged, as well as to all collateral securities held by the creditor.

4. Subrogation, being purely an equitable right, is limited only by equitable considerations ; and it is not therefore available or enforceable where there are subsisting and countervailing equities.

5. He who asks subrogation must work out his equities through those of the party to whose equities he seeks to be subrogated. He can have no equity if such party has no equity.

BILL FOR SUBROGATION.—The facts and questions presented are fully stated in the opinion.

*George V. Massey* for the complainant.

*J. Alexander Fulton* for the defendants.

THE CHANCELLOR.—The complainant is the holder of two several mortgages against Todd,—the first dated September 12, 1860, being for $3,000 ; and the second dated April 19, 1870, being also for the sum of $3,000.

The premises mentioned in the first mortgage have been sold by the sheriff for the sum of $3,825, and the premises

mentioned in the second mortgage have also been sold by the sheriff for the sum of $2,035. Besides the lien of these two mortgages, there was a judgment in the Superior Court in and for Kent County, in favor of Emanuel J. Stout, against William A. Atkinson and Henry Todd, dated September 27, 1866, the real debt whereof was $1,230. Atkinson was the principal, and Todd the surety, in the judgment.

The amount realized from the sale of the premises mentioned in the first mortgage satisfied the said mortgage, leaving an excess of proceeds of sale in the hands of the sheriff, of $224.71, applicable, according to priority of lien, to the judgment against Atkinson and Todd; still leaving a balance of said judgment, unpaid, of $1,159.23. This amount, together with other payments mentioned in the bill of complaint, to which the proceeds of the sale of the premises mentioned in the second mortgage are subject, leaves only a sum of $2,263.18 applicable to the said second mortgage of the complainant; so that there will remain due upon the said second mortgage the sum of $1,162.81. It thus appears that but for the application by the sheriff of the said sum of $1,159.23 to the judgment against Atkinson and Todd, the complainant would have received that amount towards satisfaction of his said second mortgage.

The complainant, by his bill, asks that he may be subrogated to all the rights under and in the said judgment against Atkinson and Todd, in which Todd was only a surety, for the reason that said judgment was paid out of the proceeds of the sale of land upon which the complainant had a specific mortgage lien.

It appears, from the written admission of the parties, that Atkinson, after the giving of the Emanuel J. Stout judgment bond mentioned in the bill, became surety for the said Henry Todd at the dates and for the amounts following, respectively, to wit:

To the Farmers Bank, April 1, 1869, for $1,000, int. from April 1, 1869,
   "    " Citizens Building & Loan Association, April 12, 1873, for $ 500
   "   "    "      "      "      "      Oct. 11, 1873, "    1,100
   "   "    "      "      "      "      Dec. 13, 1873, "     400

It is also admitted that Todd is insolvent, and was when the sheriff's sale mentioned in the original bill took place; and that none of the liabilities in which the said Atkinson is surety for Todd have been paid; and that the Farmers' Bank has issued a *scire facias* upon their judgment, against Todd and Atkinson.

Upon this statement of facts, ought the prayer of the complainant to be subrogated to the judgment of Stout against Atkinson and Todd to be granted?

When a surety or guarantor pays a debt of a principal, equity substitutes him in the place of a creditor, as a matter of course, without any special agreement to that effect.

Subrogation does not rest in contract, but is an equity resulting from the circumstances of the particular case.

It is enforceable in equity tribunals, because it is a matter resting in conscience, and not in consent.

Upon the performance, by the surety, of his contract of suretyship, he is entitled to the original evidences of debt held by the creditor, and to any judgment into which the debt has been merged, as well as to all collateral securities held by the creditor.

By performing the contract of suretyship, the principal obligation is discharged as respects the creditor, but is kept alive between the creditor, the debtor, and the surety, for the purpose of enforcing the rights of the surety.

Subrogation is a mode which equity adopts to compel the ultimate discharge of a debt by him who, in good conscience, ought to pay it, and to relieve him whom none but the creditor could ask to pay.

Being purely an equitable right, it is limited only by equitable considerations. It is not available or enforceable when there are subsisting and countervailing equities which forbid it.

He who asks it must work out his equities through those of the party to whose equities he seeks to be substituted. He can have no equity if such party has no equity. His equity must be clear, and not doubtful. While, as between him and

Opinion: doctrine of principal and surety.

the person to whose rights and equities he would be subrogated,—as in the case of *Huston's Appeal,* 69 Pa. 485, referred to in the argument,—there may be priority of right or claim or equity, there can be none against the party against whom he seeks subrogation, unless it is equitable as between that party and the party through whom he seeks to be subrogated. In other words, if the equity he seeks would not be enforceable in equity tribunals by the party through whom he seeks its enforcement against the party against whom it is sought to be enforced, then it is not enforceable by him as a party entitled to be substituted to an original equity.

If, but for the superior equity of Miller as against Todd, he, Todd, from the particular circumstances of this case and the subsisting equities between him and Atkinson, could not be subrogated to the judgment of Stout against Atkinson and Todd, so as to enforce its collection from Atkinson, neither can Miller, working out his equities through those of Todd, be subrogated to said judgment so as to enforce its collection from Atkinson. We have seen that, after Todd became surety for Atkinson to Stout, and before the lands mortgaged to Miller by Todd were sold by the sheriff, Atkinson became surety for Todd to a much larger amount—to the amount of $3,000—to the Farmers Bank and the Citizens Building & Loan Association. These suretyships were as follows : April 1, 1869, for $1,000; April 12, 1873, for $500; October 11, 1873, $1,100 ; and December 13, 1873, $400.

Now, when Todd became surety for Atkinson, a certain relation arose between him and Atkinson incident to which certain obligations were imposed on Atkinson and certain rights secured to Todd; and when Atkinson became surety for Todd, the same obligations were imposed on Todd, and the same rights were secured to Atkinson. What were those obligations and those rights? Indemnity and reimbursement in case of loss.

The principle applicable to the relation of principal and surety is this : Although the surety cannot, in the absence of expressed contract, sue the principal for indemnity before he

actually pays the debt, yet the implied contract for indemnity arises immediately upon the surety becoming bound. In the case of *Appleton* v. *Bascom*, 3 Met. 169, it was said to be well settled that when a surety becomes bound for his principal and at his request, the law implies a promise of indemnity by the principal to the surety, to pay the latter all the money he may be compelled to pay the creditor in consequence of his assumed liability. It was further said that the implied promise of indemnity must be considered as made at the time when the surety became responsible to the creditor on the bond.

The surety's liability was the consideration of the principal's implied promise of indemnity, and the promise must be considered as made at the time when the liability was assumed.

In the case of *Thompson* v. *Thompson*, 19 Me. 244, it was decided that when a bond with surety is given by the guardian to secure the ward against official neglect or misconduct, the relation of debtor and creditor arises at the time of signing the bond; and the obligee, or those whom the bond is designed to protect as creditors, may impeach any conveyance made after its date, though prior to any breach of the bond. Mellen, *Ch. J.*, in this case, says: "At the time of executing an instrument as sureties, each one impliedly promises all the others that he will faithfully perform his part of the contract, and pay his proportion of loss arising from the total or partial insolvency of the principal, and to indemnify them against any damages by reason of his neglecting so to do. A similar promise is implied on the part of the principal to indemnify and save harmless each of the sureties."

The same principle had been previously decided in the case of *Howe* v. *Ward*, 4 Me. 195, by the same chief justice. In this case it was remarked "that the circumstances in which sureties stand in relation to the principal and to each other seem to distinguish their claims from ordinary demands. There is a perfect understanding among them that they are all embarked in a common cause by common consent; and this understand-

ing amounts in law to an implied promise of indemnity by each to all; and for the purpose of the present argument such implied promise is equal to a bond given by each surety to all the others, and by the principal to all, conditioned that the obligor will faithfully pay his proportion of any eventual loss, and effectually protect them from all damage on account of his negligence or failure." And it was further held that this relation of debtor and creditor commences at the time of executing the bond.

In the case of *Choteau* v. *Jones*, 11 Ill. 300, a voluntary conveyance made by the principal after the surety became bound, but before he paid the debt, was set aside at the suit of the surety. This could only have been done upon the principle that the liability assumed took effect when the surety became responsible for the debt of the principal. The same principle is decided in the case of *Loughridge* v. *Bowland*, 52 Miss. 546; and in the case of *Rice* v. *Southgate*, 16 Ga. 142, Bigelow, *J.*, says: " It is clear that a contract of a principal with his surety to indemnify him for any payment which the latter may make to the creditor in consequence of the liability assumed takes effect from the time when the surety becomes responsible for the debt of the principal. It is then that the law raises the implied contract or promise of indemnity. No new contract is made when the money is paid by the surety, but the payment relates back to the time when the contract was entered into, by which the liability to pay was incurred. The payment only fixes the amount of damages for which the principal is liable under his original agreement to indemnify the surety."

The same principles govern the case of *Barney* v. *Grover*, 28 Vt. 391. In this case A was indebted to B for $500. B conveyed all his accounts to an assignee before A paid anything on account of suretyship. Afterwards A paid the amount for which he was liable as surety. It was held that the assignee could recover nothing from A. The court said: " We think there exists in a surety an equity from the time of his assuming the relation, by virtue of the implied under-

taking on the part of the principal to see him indemnified; and that although no perfect right accrues until actual payment, still such payment has such reference to the original undertaking of suretyship that it overrides any equities of a subsequent date."

Another principle applicable to suretyship, but originally resulting from the foregoing, is this : After a debt for which a surety is liable has become due, he may, without paying the debt and without being called upon by the creditor, file a bill in equity to compel the principal to pay the debt; it being unreasonable that he should always be subject to a liability to pay, even though not molested for the debt.

The rule upon this subject, laid down by *Lord* Redesdale, and cited with approval by Vice-Chancellor Giffard in the case of *Wooldridge* v. *Norris*, L. R. 6 Eq. Cas. 413, is this : " A court of equity will also prevent injury in some cases by interposing before any actual injury has been suffered, by a bill which has been sometimes called a bill *quia timet*, in analogy to proceedings at the common law where in some cases a writ may be maintained before any molestation, distress, or impleading. Thus, a surety may file a bill to compel the debtor on a bond in which he has joined, to pay the debt when due, whether the surety has been actually sued for it or not; and, upon a covenant to save harmless, a bill may be filed to relieve the covenantee under similar circumstances."

Now, to apply these principles to the facts of the case before me. Todd was surety for Atkinson in the judgment to Stout. Upon becoming such surety, there was an implied contract between them that Atkinson should pay the debt, and indemnify Todd against loss by reason of the suretyship; and when the debt became due, Todd had a right to file a bill in equity to compel Atkinson to pay it.

Atkinson afterwards, in 1869, became surety to the bank for Todd ; and in 1873 he became surety for Todd in the three several debts hereinbefore stated, to the Citizens Building & Loan Association. On becoming such surety there was an implied contract between Todd and Atkinson that

Todd would pay the several debts, and indemnify Atkinson from loss on account of the said several suretyships; and Atkinson had the right, when the said several debts became due, to file a bill in equity to compel Todd to pay them. Neither Todd nor Atkinson filed such bills. Several years elapsed, and the farm and millsite of Todd, upon which complainant held the mortgage, and upon which the judgment against Atkinson and Todd was a lien, were sold by the sheriff; and $1,159, a part of the proceeds of sale, was applied by the sheriff to satisfy the judgment of Stout against Atkinson and Todd, in which Todd was only surety; and thereby there was an insufficiency of the proceeds of sale of the premises to pay the mortgage of the complainant thereon, by about the sum of $1,162.

Now, it is clear, if there were no countervailing equities on the part of Atkinson to prevent it, and if the complainant's mortgage had been satisfied, Todd would have had an equity against Atkinson to be substituted in subrogation to the judgment of Stout against Atkinson; or he would have been entitled to an assignment of such judgment, under the Act of Assembly, to enable him to collect the amount thereof from Atkinson. The mortgage of the complainant, however, not having been paid out of the proceeds of sale and the deficiency owing by Todd to the complainant, the complainant's equity to be subrogated to the judgment of Stout against Atkinson would, in accordance with the decision of *Huston's Appeal*, be superior to that of Todd, and would be available as against Atkinson, unless there were countervailing equities on the part of Atkinson, as between him and Todd, through whose equities the complainant must work out his equity.

Were there such countervailing equities? Suppose the complainant's mortgage had been satisfied, or the complainant had been silent, not asserting any equity to subrogate, and Todd had filed a bill in equity against Atkinson to compel Atkinson to pay him the amount of the judgment against Atkinson and himself, which had been paid out of the proceeds of the sale of his land; and suppose, in answer to such

bill, that Atkinson had shown to the court that, long before such payment by sale of Todd's lands, he had become bound as surety for Todd in three times the amount of such payment; that Todd was insolvent; that he would be compelled to pay the amount of such suretyship for Todd; and that Todd's creditor was in the process of collecting the amount of such suretyship from him,— would it be equitable, under such circumstances, that Todd, by being subrogated to the judgment of Stout, should collect the amount of such judgment from Atkinson? If not, it must be for the want of equity in Todd, under the circumstances, as against Atkinson.

Again, suppose Todd had taken an assignment, under the Act of Assembly, from the plaintiff therein, of the judgment of Stout against Atkinson and himself, after it had been paid out of the proceeds of the sale of his land, and had proceeded to collect the amount of said judgment upon execution against Atkinson, and Atkinson had filed a bill of equity to restrain the execution, because of his suretyship for Todd, Todd's insolvency, and the proceedings against him, Atkinson, to compel the payment by him of the amount of his said suretyship, — would not a court of equity under such circumstances have enjoined Todd from collecting the amount of the judgment so assigned to him, until Todd should pay the debt for which Atkinson was his surety? If so, why? Simply for the reason that, under such circumstances, it would be inequitable that Todd should collect from Atkinson the amount of the said judgment until he paid the debts in which Atkinson was his surety.

It is true Atkinson has not paid Todd's debts for which he is surety, but it is equally true, in the light of the admissions in this cause, that he will be compelled to pay them; and this fact would be sufficient to prevent the enforcement by Todd of the collection of the amount of the judgment of Stout against himself and Atkinson, from Atkinson, and to prevent his subrogation to said judgment with a view to such collection.

Now, the complainant has no equity, as against Atkinson,

other than that which he must work out through the equity of Todd against Atkinson; and Todd having no such equity enforceable in this court, the complainant can have none.

This opinion is not in conflict with any of the authorities cited by the complainant's solicitor. *Huston's Appeal*, 69 Pa. 485, mainly relied on, does not conflict with, but, so far as it goes, is confirmatory of, the views here presented.

That case was as follows: On the 7th day of May, 1868, a judgment by confession upon warrant of attorney for $271.67 was entered in favor of Conrad Sylvas, against Adam Titherington and F. Hollen,—Hollen being surety for Titherington. On the 17th of October, 1868, Harvey J. Huston and Samuel M. Huston obtained a judgment against Hollen for $2,235. The First National Bank of Indiana, at the April Term, 1869, obtained a judgment against one Clawson, who was indorser on a note for Hollen, for about $1,200, and Clawson's property was levied upon in satisfaction of the judgment. On the 2d of April, 1869, Hollen's real estate was sold by the sheriff. Out of the proceeds of the judgment, the sheriff, on the 17th of April, paid to the attorneys of Sylvas $302.79, in full of his judgment and interest.

It will be observed that this was a case where the lands of a surety were sold by the sheriff to pay the debts of a principal in a judgment. In this respect it was like the present case. There was a conflict of claims between the Hustons —who had the first judgment lien against the lands of Hollen, which had been sold subsequent to that of Sylvas—and Clawson, who had no judgment lien against Hollen's real estate, but who claimed to be entitled to subrogation to the judgment of Sylvas, because Hollen had assigned his equity therein to him so as to defeat the right of subrogation of the Hustons. The court decided that Hollen was entitled to be subrogated to the judgment of Sylvas as against Titherington, for whom he was surety. It will be further observed in this case, as distinguishing it from the one before me, that Titherington had himself no equities against any of the claimants,—the Hustons, Clawson, or Hollen; and in this respect it very

materially differs from the present, where Atkinson has equities to a much larger amount against Todd than Todd had against him. The court, in the case referred to, said that Hollen was entitled to subrogation as against Titherington, but that it was not a mere personal right which could pass to Clawson by the assignment, but a right which in equity passed to the judgment creditors of Hollen; and that as between Hollen and his judgment creditors, who had a judgment lien, their equity was superior to his.

This doubtless is perfectly right; for it would have been inequitable to allow Hollen to deprive his judgment creditors of the benefit of their lien upon his real estate, by pocketing the proceeds himself or by assigning the right to receive such proceeds to another so as to defeat them.

By allowing the complainant to be subrogated to the judgment of Stout against Atkinson and Todd, through the supposed equity of Todd, this effect would result: Atkinson would be deprived of an equity not to be asserted by a suit, but consummated and complete in part by law,—the payment and discharge of his equities against Todd to the extent of $1,159 for the benefit of one whose right to subrogation as against Todd did not arise until long after Atkinson's equities as against Todd commenced; for we have already seen that Atkinson's equities as surety for Todd arose when he became such surety. But the complainant's equity against Todd had no existence until Todd's land was sold and a portion of the proceeds applied to the judgment of Stout against Atkinson and Todd.

The complainant asks the active interposition of the court to compel Atkinson, in his behalf, to surrender the benefit of a realized equity (although he has still further equities against Todd) and in effect to pay the amount so realized to the complainant, although the complainant's equity was long subsequent in date to that of Atkinson. "It is true," says the court, "that the appellant's right of subrogation depends on the equity of Hollen, but as between them their equity is superior to his." The meaning of this is that if Hollen had

an equity against Titherington, the appellants, as creditors of Hollen, would have a right to subrogation to the judgment against Titherington; but if Hollen had no such equity, his creditors could have no such right.

It results, therefore, from the doctrine held in the case of *Huston's Appeal*, when applied to the present case, that the complainant's right to subrogation to the judgment of Stout against Atkinson and Todd depends entirely upon the question whether Todd himself—not as between him and the complainant, his creditor, but between him and Atkinson—has an equity to be subrogated to said judgment.

I have already considered that question, and shall therefore decree that the injunction in this cause be dissolved, and that the bill of complaint be dismissed, with costs.