## William H. Hall, Admr., etc.

### *v.*

## Mary A. B. Hoxsey *et al.*

1. Surety—*right to have creditor avail of collaterals.* Where a creditor receives notes, mortgages, or property, in pledge for a debt, they are regarded as an indemnity to the creditor and to the surety of the debtor, and the surety will have the right to exact of the creditor proper care and diligence in the management and collection of such collateral security, and any waste or misapplication of the collaterals will operate as a release of the surety to the amount of the loss actually sustained.

2. Same—*rule does not apply to security given by law.* Where a party, in leasing land, takes notes with personal security for the payment of the rent, and also reserves in his lease the right of distress, the lessor is not bound to assert the lien thus secured, but may collect the notes of the surety. The surety in such case has no interest in the landlord's lien.

3. Subrogation—*by surety of tenant to landlord's rights.* If the surety of a tenant should pay the rent due the landlord, it is intimated that the surety might be subrogated to all the rights of the landlord as to the unexpired term, including the right to distrain.

4. Administration—*allowance of claim not due.* Under the statute, notes or other demands not due may be allowed against the estate of a deceased person, on making a proper rebate of interest.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. GILLESPIE & HAPPY, and Mr. JOHN G. IRWIN, for the appellant.

Messrs. METCALF & BRADSHAW, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

Appellees, on the 29th day of July, 1873, leased certain premises in Madison county, to Patrick Welch, for the term of five years from the first day of March, 1874, at an annual rent of $5 per acre. The rent was payable semi-annually on the 1st day of October and 25th day of December, each year. The lease provided that Welch should execute notes for the rent, with approved personal security. It also contained this provision: "Nothing herein contained shall interfere with or abridge the right given, of distress by law, to the parties of the first part."

The rent amounted to the sum of $500 per annum, for which Welch executed his several promissory notes, payable as provided for in the lease, which were signed by John Reynolds, as surety. Reynolds died on the 8th day of July, 1874. Welch took possession of the premises under the lease, and occupied the same until the 19th day of February, 1876, when he abandoned the leased premises and moved to St. Louis. A few days before Welch left the premises, appellant, administrator of the estate of John Reynolds, saw one of the appellees and notified him that Welch was about to leave, and requested that he should distrain for the rent then due, amounting to between five and six hundred dollars. Appellee replied that he was satisfied with his security, and declined to distrain. Upon substantially these facts the circuit court, on appeal from the county court, where the notes were presented as a claim against the estate of Reynolds, rendered judgment against appellant for the full amount of the notes, less a rebate of interest upon those not due. It is contended, in behalf of

appellant, that the right of distraint which appellees had under the law, and which was recognized in the lease, was, in substance and legal effect, a pledge of property by them held, as security for the payment of the rent, and as this collateral security was in their hands, they became trustees, and were bound to use due diligence to collect the rent from Welch by distraint; and a failure on their part, in this regard, wholly, or at least partially, released the estate of Reynolds from the payment of the notes.

There can be no doubt in regard to the principle, that where a creditor receives notes, mortgages, or property, in pledge for a debt, such securities may be regarded as an indemnity to the creditor and to the person who may have become bound as surety for the original debtor, and the surety has the right to exact of the creditor proper care and diligence in the management and collection of such collateral security, and any waste or misapplication of the collaterals would, no doubt, operate as a release of the surety, to the amount of loss actually sustained. This is the doctrine of *Rogers* v. *School Trustees*, 46 Ill. 428, and *Phares* v. *Barbour*, 49 Ill. 370.

Where a creditor holds property in pledge for the payment of a debt, which debt is secured by the indorsement of a third party, the creditor, in so far as the pledged property is concerned, may be regarded as a trustee for the surety, and the surety has the right to exact of the trustee a faithful observance of all duties arising from that relation; but, in this case, no property, of any description, was placed in the hands of appellees, to hold in pledge or security for the payment of the notes. The law gave appellees a lien on the crops raised by the tenant each year, for the amount of the rent as it matured; but this lien given by the law did not impose any obligation upon them to do or not to do any act for the protection or security of Reynolds, who had become surety for the payment of the rent. Had the tenant placed notes or mortgages, or property of any description, in appellees' hands, to hold in security for the payment of the rent, then Reynolds could have required of them a faithful management of such securi-

ties, and an application of the proceeds in discharge of the notes they were pledged to secure; and had appellees failed or neglected to properly manage such securities, and loss had accrued, the loss would fall upon them.

Appellees' right to distrain for rent was but a cumulative remedy, to which they had a right to resort if they saw proper; or, if they did not see fit to take that course, then they had the clear right to enforce payment in the ordinary way; and, as between appellees and the deceased, the latter had no interest whatever in the lien given by the statute. The fact that the lease gave appellees the right of distraint, is of no importance. They had that right regardless of the lease. It was given them by the law, and not by the tenant by contract. The case, then, assumes this position: Welch, the principal debtor, placed no property whatever in the hands of appellees, as security for the notes. He conferred no right upon them, of any description, which would be of benefit to the surety; and we are aware of no principle of law upon which they could be regarded as trustees for the surety, or be held under any obligations to resort to the right of distraint given them by the statute. Appellant, therefore, has no right to complain that appellees disregarded his request to distrain the property of the tenant for the payment of the rent.

As a general rule, a surety who discharges a debt may be subrogated to all the rights of the creditor. *Taylor* v. *Beck*, 13 Ill. 376; *Clauson* v. *Morris*, 10 Johns. 524. And under this principle, it may be, if appellant had come forward and paid the notes to appellees for his principal, as against the tenant, Welch, he might have been subrogated to all the rights of appellees as to the unexpired term. In this mode he might have obtained the benefit from the landlord, of saving the rent by distraint; but we are aware of no other mode in which he could derive any benefit whatever from the lien given appellees by the statute.

The only other question for consideration in the case is, whether appellees were entitled to recover on the notes not

due. Section 67, of chap. 3, Rev. Stat. 1874, p. 116, declares, any creditor whose debt or claim against the estate is not due, may, nevertheless, present the same for allowance and settlement, and shall, thereupon, be considered as a creditor under this act, and shall receive a dividend of the said decedent's estate, after deducting a rebate of interest for what he shall receive on such debt, to be computed from the time of the allowance thereof to the time such debt would have become due according to the tenor and effect of the contract. Under this section of the statute the court allowed appellees the amount of the notes not due, after deducting interest as provided for in the section, which, we are of opinion, was correct. Under the seventh clause of section 70, of the same chapter, all debts against an estate are required to be exhibited to the county court for allowance within two years from the granting of letters of administration, and all demands not so exhibited shall be barred, unless assets of the estate, not inventoried, are discovered, out of which such demands may share in the settlement of the estate. If a claim could not be allowed until due, if it happened to not become due until the expiration of the two years from granting of letters of administration, it might be in the power of the administrator, by filing a complete inventory, to cut off entirely the collection of the claim. In order to avoid this difficulty, no doubt, and at the same time compel the settlement of estates as speedily as possible, the legislature enacted section 67.

There is much wisdom in the law requiring estates to be settled at an early day. Costs are saved, estates are not as liable to be squandered by administrators, who may become negligent or reckless, by long delay, and at the same time creditors secure the amounts due them, and the balance of assets can be distributed among the heirs or devisees. At all events, the legislature had the power to declare that appellees could recover the amount of their notes before due, and it is not the province or duty of courts to interfere.

When the notes were executed, Reynolds knew or was bound to know what his liability was under the contract, and that

under the statute it might occur that the amount of the notes could be recovered before they became due, and his legal representatives are in no position to complain.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*