FIRST NATIONAL BANK OF GREENWOOD V. T. J. WILBERN.*

FILED JUNE 18, 1902. No. 12,003.

Commissioner's opinion, Department No. 1.

**Liability of Surety:** ANSWER: DEMURRER. An answer by a surety alleging that, after his liability accrued, property sufficient in amount to discharge the obligation had been conveyed by the principal debtor to the creditor as security, the equitable title remaining in the principal, followed by the general allegation that the creditor had received from principal, property and money sufficient to pay off the note sued on, does not state a defense.

ERROR from the district court for Cass county. Tried below before JESSEN, J. *Reversed.*

*C. S. Polk,* for plaintiff in error.

*Samuel M. Chapman, A. N. Sullivan* and *Robert Ryan,* contra.

DAY, C.

The plaintiff brought this action in the district court of Cass county against the defendant to recover upon a promissory note. The note was dated January 31, 1896, and by its terms became due ninety days after date. It was joint and several in form and was signed by L. Russell, T. J. Wilbern and A. L. Van Doren. The defendant, Wilbern, was the only one of the makers made a party to the action. Upon the issues joined by the answer and the reply a trial was had resulting in a judgment for the defendant, to review which the plaintiff has brought error to this court.

It is first urged by the plaintiff that the answer does not state a defense to the plaintiff's petition. The answer is quite lengthy and no good purpose would be subserved by

*Rehearing allowed. Judgment of reversal adhered to. See opinion, page 246, *post.*

setting it out at length.  The instructions of the trial court contained a full and fair epitome of the answer, as follows:

"To this petition the defendant answers by admitting that he executed the note set forth in the plaintiff's petition, but states that he and the said A. L. Van Doren were both sureties on said note and signed the same at the request of the said L. Russell, who was the real debtor, and that the plaintiff herein knew that both this defendant and the said A. L. Van Doren signed said note as sureties, and that the note in question was a renewal note given to take up a number of prior notes signed by the same parties, on all of which the said L. Russell was the real debtor and this defendant and said A. L. Van Doren were sureties only; that during all of 1894, 1895 and 1896, both the said L. Russell and the said A. L. Van Doren were financially responsible and were the owners of property sufficient in law to satisfy said indebtedness; that at the time the note in question fell due on or about May 1, 1896, one N. H. Meeker, the president of the plaintiff bank herein, solicited this defendant to sign a renewal note, which the defendant refused to do, and defendant informed the said Meeker that the principal debtor, L. Russell, was then solvent and able to pay the same, but that said Russell was in failing circumstances and being pressed by his creditors and this defendant considered it unsafe to allow said note to go uncollected, and urged the said N. H. Meeker to take steps to immediately collect the said note from the principal debtor, the said L. Russell, at which time the said Meeker agreed that he would not extend the time of payment of said note but would proceed to collect the same.  This defendant further answers and says that said N. H. Meeker failed and neglected to collect said note, as he had agreed to do, but that he extended the time thereon to the said Russell, without the knowledge and consent of this defendant and took and received from the said Russell chattel security for said note and extended the time of the payment thereof indefinitely, all of which the defendant states was done

without his knowledge or consent. Defendant further states in his answer that shortly after the maturity of said note and at the time he requested the plaintiff to collect the same from the said Russell, the said Russell was also indebted to one A. D. Welton, a stockholder and director in said bank and an employee therein in the sum of twenty-two hundred dollars; that said indebtedness to the said Welton was in fact owned and controlled by the said bank and was evidenced by a real estate mortgage on the farm of the said Russell and that the said farm was then worth seven thousand dollars; that said indebtedness of said Russell to the plaintiff herein was at that time unknown to this defendant, and that the president and manager of said bank purposely and intentionally withheld said facts from this defendant at the time he requested this defendant to renew the note sued on herein; that some time thereafter, between June and November, 1896, the plaintiff herein pretended to purchase said farm from said Russell, took and received from the said Russell a warranty deed for the same for the pretended consideration of sixty-five hundred dollars and took and received from the said Russell certain chattel mortgages upon all the personal property of the said Russell, and from then up to the present time the plaintiff has renewed and kept in force said chattel liens, thereby covering up and incumbering the property of the said Russell, and thereby hindering and delaying his bona-fide creditors from collecting their just debts from the said Russell. The defendant further states that the said Russell is in fact at the present time the equitable owner of the title to said real estate, and that the said pretended deed to the said bank was in fact only given to secure the indebtedness mentioned above; that said indebtedness amounts to only twenty-two hundred dollars with accrued interest thereon. Defendant further states that the plaintiff herein has received from the said Russell sufficient money and property to satisfy and pay off the note sued on herein."

A second defense alleged in the answer was also epito-

mized in the instruction, but as that defense is no longer urged, it will not be considered.

Many of the facts alleged in the answer might appeal to a jury as a sufficient reason why the defendant should be released from liability on the note, but in law they constitute no defense and the court instructed the jury, very properly, to disregard certain of the alleged defenses. The court, however, submitted to the jury, as the issue in the case, the question as to whether or not the note had been paid or whether or not the plaintiff, by its actions, had released the defendant. The only reference in the answer to payment is found in paragraph seven of the first defense, and is as follows: "Defendant further charges the truth to be that the said plaintiff bank has received from the said Russell ample and sufficient property and money to satisfy and pay off said promissory notes." This general statement as to receipts of money and property sufficient to pay the note is far from being an allegation of payment and must be taken to have reference to the specific allegations of receipts of property by the plaintiff mentioned in the answer. It will be noted that the specific allegations of transfer are in every instance alleged to have been given by way of security. With reference to the transfer of the farm to plaintiff by deed, it specially alleged "that the said Russell is the bona-fide owner and possesses the equitable title to said real estate and has the right and authority to sell and dispose of the same"; so, with reference to the chattel property, it is referred to as being held as security. There is no allegation that any of the securities have been released or given up which might have been applied on defendant's indebtedness, and no claim is made that the securities were received in lieu of defendant's liability. It is the settled law that where a creditor has the means of satisfying his claim in his hands, or within his control as security, and does not use it for that purpose, but relinquishes it to his debtor, or misapplies it to the payment of unsecured claims, a surety for the debt will *pro tanto* be discharged; the reason of the

rule being that the surety, upon payment, is entitled to be subrogated to the rights of the creditor in the securities held for the debt. *Price County Bank v. McKenzie,* 65 N. W. Rep. [Wis.], 507; *Hutchinson v. Woodwell,* 107 Pa. St., 509, 520; *City Bank v. Young,* 43 N. H., 457; *Burr v. Boyer,* 2 Nebr., 265; *Guild v. Butler,* 127 Mass., 386; *Hall v. Hoxsey,* 84 Ill., 616. But the law does not require that the creditor shall first exhaust the securities held for the debt before he can pursue his remedy against the surety. Brandt, Suretyship and Guaranty, sec. 237, and cases cited. In *Merchants' Bank v. Rudolf,* 5 Nebr., 527, it is said: "The mere fact that a bank holds other security for the payment of a note, to which it might resort, is no ground for the release of a surety." A surety has the right to pay the obligation for which he is bound with the principal, and thus become subrogated to the rights of the creditor in any securities held for the payment of the debt, but he can not demand as a condition precedent to a suit that the securities be first exhausted. Authorities are found supporting the doctrine that, under certain conditions, an action in equity will lie in behalf of the surety to compel the creditor to first exhaust the securities held for the debt before proceeding against the surety, but this principle can not be invoked as a defense to a suit on the note in a law action. In our opinion, no defense to the note is pleaded in the answer. We therefore recommend that the judgment of the district court be reversed and the cause remanded for further proceedings.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.

On March 4, 1903, the following opinion on rehearing was filed:*

*Motion to amend decision. Opinion filed denying motion. See page 249, *post.*

1. **Principal and Surety: CREDITOR: PROPERTY OF PRINCIPAL DEBTOR: RELEASE OF SURETY.** The mere fact that a creditor has in his hands property of a principal debtor sufficient in amount to pay or secure the debt, does not of itself operate to release the surety, because it does not of itself put it out of the power of the surety, after the payment of the debt, to resort to the property for his indemnity.

2. ——: ——: ——: ——: **FRAUDULENT INCUMBERING OR CONCEALING: INDEMNITY: RELEASE PER SE.** A creditor, by fraudulently incumbering or concealing the property of an insolvent principal debtor so as to delay or embarrass a surety in obtaining indemnity, releases the latter from liability.

AMES, C.

On a reargument of this case the question discussed in the briefs of counsel is whether the former decision (*ante*, page 242), is right in holding that the answer does not state facts sufficient to constitute a defense to the petition. We think that decision is right. The opinion was not, as we understood it, intended to controvert the proposition that under our practice an equitable defense may be pleaded in an action at law, or that issues of fact raised by the reply to an answer pleading such a defense, may be submitted to the jury. If it be granted, which we do not feel called upon now to decide, that an unreasonable neglect or delay by a creditor to sue a principal debtor upon being requested so to do by a surety, followed by the insolvency of the former, operates as a release of the latter, still we do not find that issue to have been tendered by the answer. It is alleged that the creditor was informed at the time the request was made that the principal was "solvent and able to pay same [viz., the note in question], but that he was in failing circumstances and was compelling his creditors to bring suits against him in order to collect debts due." How both items of information could have been true is not explained, and it is not distinctly alleged that either of them was so. Neither is it averred that his condition in either respect afterwards changed for the worse. The answer does charge that the plaintiff subsequently acquired title to the principal's farm "and took and received

from the said Russel chattel liens, being chattel mortgages upon all the personal property, goods and chattels of the said Russell, and from that time until the present time has renewed and kept in force said chattel liens, thereby fraudulently covering up and incumbering the property of said Russell to hinder and delay his bona-fide creditors from collecting their just demands against said Russell." But it is not alleged that the liens were obtained or continued with actual fraudulent intent, or without consideration, or in violation of any positive law. Neither is it alleged that Russell's insolvency or ability to pay was any less after these transactions had taken place than previously. There is in fact no distinct allegation that he ever became insolvent. For aught that is alleged he may have property other than that mentioned in the answer from which satisfaction of the note may be obtained. But even of such property there is, if the answer be true, a sufficient amount for the indemnity of the defendant. It "charges the truth to be that the said Russell is the bona-fide owner and possesses the equitable title * * * and has the right and authority to sell and dispose of" a farm mentioned in the answer, the legal title to which is said to be in the plaintiff as security for an indebtedness of $2,200, and accrued interest, "and no more," and the value of which is alleged to be $7,000. As is said in the former opinion, the mere fact that a creditor has in his hands property of a principal debtor sufficient in amount to pay or secure the debt, does not of itself operate to release the surety, because it does not of itself put it out of the power of the surety, after payment of the debt, to resort to the property for his indemnity. If the answer had pleaded in issuable form that the principal was insolvent, and that his property was fraudulently incumbered or concealed by the plaintiff, so as to delay or embarrass the surety in obtaining indemnity, it would have stated a complete defense at law. We do not think that by such means the creditor can drive the surety to the tedious, expensive and doubtfully efficacious remedy of an accounting in equity.

It is therefore recommended that the former decision of this court be adhered to, and that the judgment of the district court be reversed and a new trial granted, with leave to defendant to amend his answer.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the former decision of this court be adhered to, and that the judgment of. the district court be reversed and a new trial granted, with leave to the defendant to amend his answer.

REVERSED AND REMANDED.

On motion to amend the foregoing decision and judgment, the following opinion, denying the motion, was filed on May 20, 1903:

Rule of Practice: APPEAL IN DISTRICT COURT. The rule of practice requiring the issues triable in the district court upon appeal to be the same as those in the same case in the court from which the appeal is taken, applies to the substance only, and not to the. form of the pleadings by which such issues are tendered or raised.

AMES, C.

This is a motion to amend the former decision and judgment of this. court by expunging therefrom the leave granted to the defendant in error to amend his answer in the district court. The motion is supported by a transcript of proceedings, which was not contained in the record upon which the cause was argued and submitted, and which discloses that the action originated in the county court of Cass county, and that the pleadings upon which it was tried in that court and in the district court are identical, and it is contended that the leave to amend, granted by this court, permits issues to be raised in the district court differing from those in the. county court, contrary to the established practice in such cases.

We do not think the matter thus brought to our atten-

tion is sufficient to call for the granting of the order asked for. The defense in the lower courts was that the plaintiff, who is the payee in the note in suit, has fraudulently incumbered and concealed the property of the principal maker, to the embarrassment, delay and injury of the defendant, who was obligated upon the note as surety. This court held that these facts, if proved, are a complete defense at law as well as in equity, to a suit against the surety upon the instrument, but that they were so defectively pleaded as not properly to define the issue. The leave to amend, of which complaint is made, does not purport to grant the defendant permission to tender any new matter as a defense, but to so amend his pleading as to render available that of which, because of defective statements in his answer, he was deprived of the benefit. The granting of such leave was not error. It has repeatedly been held by this court that the rule of uniformity, which the plaintiff invokes, applies to the substance only, and not to the form of the issues in the district and inferior courts.

There is no merit in the motion and we recommend that it be denied.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the motion be denied.

MOTION DENIED.