## NATIONAL BANK OF POTEAU v. LOWREY.

No. 6013.   Opinion Filed April 18, 1916.

(157 Pac. 103.)

1. **PRINCIPAL AND SURETY—Remedies of Surety—Right to Require Creditor to Bring Suit.** Section 1058, Rev. Laws 1910, is not in conflict with the provisions of chapter 49, Negotiable Instruments Law (Rev. Laws 1910, pp. 1059 'o 1092), but is an enlargement of the grounds for discharge enumerated under sections 4169 and 4170 of said chapter.

2. **SAME.** A surety by verbal demand upon his creditor cannot compel such creditor to proceed against the principal under section 1058, **supra**; section 4964, Rev. Laws 1910, making it optional with plaintiff as to which one of the parties to a promissory note he will sue. **Palmer v. Noe**, 48 Okla. 450, 150 Pac. 462, and numerous authorities cited.

3. **SAME.** If under section 1058, **supra**, it was in the power of the surety to the note to pursue his remedy against the principal, then, in that case, the mere failure or neglect of the creditor to do so, although requested by the surety to bring suit, will not exonerate the surety.

(Syllabus by Davis, C.)

*Error from County Court, Le Flore County;*
*P. C. Bolger, Judge.*

· Action by M. C. Lowrey · against National Bank of Poteau, to recover the sum of $117.75, interest, and costs. Trial was had before a justice of the peace, and the defendant appealed to the county court. A jury was waived, and the cause submitted to the court on a written agreed statement of facts. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

*T. T. Varner,* for plaintiff in error.

*R. P. White* and *T. H. Du Bois,* for defendant in error.

Opinion by DAVIS, C. The parties will be designated as in the court below, plaintiff in error as defendant bank, and defendant in error as plaintiff.

The facts in this case can best be understood from an inspection of the written agreed statement of facts, which is as follows:

"AGREED STATEMENT OF FACTS.

"It is hereby agreed by and between White & Du Bois, attorneys for the above-named plaintiff, and T. T. Varner, attorney for the above-named defendant, that the facts upon which a decision of the court is asked herein, are as follows: That on the 19th day of January, 1910, one Simon Atoka executed a note to the defendant bank in the sum of $355, with interest at 10 per cent. thereon from maturity, the same being due and payable April 19, 1910. That the said note was also signed by 'Lowrey Brothers, per M. C. Lowrey,' who was a member of the firm of Lowrey Bros. on said date and was authorized to sign the note. That at the time of the execution of the note Simon Atoka also executed to the bank a chattel

mortgage, covering about 25 head of cattle and 6 head of horses, together with other property described in said mortgage. That this mortgage was given as additional security to the said note. That the said Lowrey Bros. signed the note as surety, but that the said note, by its terms, is a joint and several note. That a part of the money loaned by the bank, and for which the note was executed, was paid to the said Lowrey Bros. on an account due them, and it was for the purpose of procuring a part payment on their account that, they signed the note with the said Simon Atoka. That said note was not paid when due, but that payments were made at different times. That in March, 1912, a portion of the note remaining due and unpaid, the defendant bank, through its attorney, C. M. Bagwell, took possession of all of the mortgaged property that could be found belonging to Simon Atoka, and advertised and sold the same under foreclosure proceedings. That the said property sold for $100.25, and after paying the expense of selling there remained $77.25 which was credited on the note, leaving a balance due thereon of $102.75. That subsequent to said date, to wit: March, 1912, and after the other property was sold under mortgage as aforesaid, M. C. Lowrey, in person, notified the defendant bank that the State Bank of Le Flore had taken into its possession and sold two of the horses which were included in the mortgage aforesaid! and the said Lowrey requested the cashier of the defendant bank to institute proceedings against the State Bank of Le Flore to recover the value of said property. That the cashier of the defendant bank, W. A. Campbell, then and there refused to take any proceedings against the bank, and advised the plaintiff, M. C. Lowrey, that if he, or Lowrey Bros., would pay the balance due on the note, the bank would deliver the mortgage to him for the purpose of allowing him to take any proceedings he might desire against the said. State Bank of Le Flore. That the plaintiff, M. C. Lowrey, or Lowrey Bros., refused to pay the balance and to have the mortgage delivered to them. That afterwards,.

and while the note was still due and unpaid, plaintiff, M. C. Lowrey, had on deposit in defendant bank a sum sufficient to pay the balance of the note and interest amounting at that time, to wit, on the 14th day of June, 1913, to the sum of $117.75. That on said date last mentioned the defendant transferred this amount of money from the account of plaintiff to the payment of this note and credited the amount thereof on said note. That prior to this time the firm of Lowrey Bros. had signed the said note as aforesaid, had been dissolved, and M. C. Lowrey, the plaintiff herein, had assumed payment of all indebtedness owing by Lowrey Bros. That prior to this time the mortgage which was taken to secure the note aforesaid had expired, and no renewal affidavit had been filed within 30 days prior to January 20, 1913. That the value of the horses which were taken charge of and sold by the First State Bank of Le Flore was sufficient to have discharged the balance of the note. At the time plaintiff, M. C. Lowrey, gave notice to defendant to proceed to collect the amount from the First State Bank of Le Flore, he also notified defendant that if it failed to proceed against said bank as requested, plaintiff would hold himself as released from any further obligation on the note. That on the 18th day of June, 1913, the plaintiff, M. C. Lowrey, brought suit against the defendant bank, to recover said sum of $117.75, upon consideration of the above facts.

"WHITE & DU BOIS,
"*Attorneys for Plaintiff.*
"T. T. VARNER,
"*Attorney for Defendant.*"

The trial court in effect held that the failure on the part of the defendant bank, as creditor, to institute proceedings against the First State Bank of Le Flore at the request of the plaintiff, at a time when the lien of the first mortgage held by said defendant bank as collateral

security for the payment of the note upon which the plaintiff was liable as a surety was valid and subsisting, operated as a discharge of the plaintiff as surety on said note, and that thereafter the failure on the part of the defendant bank, as creditor, to renew the filing of the chattel mortgage in question, executed and delivered to it by the principal debtor on the note, so as to keep said lien alive and subsisting for the protection of the plaintiff as surety on said note, operated as a release or discharge of the plaintiff as surety thereon. If under either of these holdings the plaintiff has been legally discharged as surety on the note, then the court below was not in error in rendering judgment, under the law and upon the agreed statement of facts herein set forth, against the defendant bank and in favor of the plaintiff.

Section 1058, Rev. Laws 1910, reads as follows:

"A surety may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden; and if in such case the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced."

This section is not in conflict with the provisions of chapter 49, Negotiable Instruments Law, Rev. Laws 1910, pp. 1059 to 1092, but is an enlargement of the grounds for discharge enumerated under sections 4169 and 4170 of said chapter.

Section 4694, Rev. Laws of Oklahoma 1910, reads as follows:

"Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, and indorsers and guarantors, may all

or any of them be included in the same action, at the op-· tion of the plaintiff."

Under this section of our Code it is optional with the plaintiff as to which one of the parties to a promissory note he will sue, and the order in which, if more than one of said parties are to be sued, he will proceed against such parties, and no party to such note, whether principal or· surety, can, by oral demand or request, force the plaintiff or principal debtor to his choice. *Palmer v. Noe,* 48 Okla. 450, 150 Pac. 462, and numerous authorities cited. There- fore it follows that a surety by verbal demand upon his creditor cannot compel such creditor to proceed against the principal under section 1058, *supra,* but the surety can, under said section, require his creditor to pursue any other remedy in his power against the principal which the surety cannot himself pursue, and which would lighten his bur- den; and, if in such case, that is to say, only in case the surety requires his creditor to pursue any other remedy in his power against the principal which the surety cannot himself pursue, and which would lighten his burden, the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced.

In the instant case plaintiff applied to the defendant bank, after the maturity of the note and while the lien of the chattel mortgage held by said defendant bank as col-· lateral security for said note was valid, binding, and sub- sisting, demanding that said defendant bank proceed at once against the First State Bank of Le Flore to recover the value of the two horses taken by said bank and sold under a second mortgage, the said horses being a part of the chattel securities included in the first mortgage of the defendant bank, said horses being of a value in excess of

the balance due said defendant bank on the note in question, and said plaintiff notifying said defendant bank at the time that upon its failure to so comply with his demands he would hold himself as released from any further obligation on the note. Had the matter ended here and the defendant bank by its neglect or indifference failed to proceed against the First State Bank of Le Flore as requested by plaintiff, and afterwards, through its carelessness or neglect, lost its lien under its first mortgage by not renewing the filing of same in compliance with the law, then it would seem to be clear that the plaintiff would be entitled to recover against the defendant bank upon his cause of action herein sued upon under section 1058, *supra*. But at the very time that the plaintiff made his demand upon the defendant bank, said bank, through its cashier, W. A. Campbell, then and there refused to take any proceedings against the Bank of Le Flore, and advised the plaintiff, M. C. Lowrey, that if he, or Lowrey Bros., would pay the balance due on the note, the bank would deliver the mortgage to him for the purpose of allowing him to take any proceedings he might desire against the said First State Bank of Le Flore, and the plaintiff, M. C. Lowrey, or Lowrey Bros., refused to pay the balance and to have the mortgage delivered to them. Thus it is plain that the defendant bank, the creditor of the plaintiff surety on the note, placed it within the power of the surety, so that he, himself, could pursue his remedy against the principal and against the First State Bank of Le Flore, and by so doing lighten his own burden. If under section 1058, *supra,* it was in the power of the surety on the note to pursue his remedy against the principal, then, and in that case, the failure or neglect of the creditor to do so will not exonerate the surety.

"There is no sound reason for permitting a surety to discharge himself, by requesting the creditor to proceed against the principal. The undertaking of a surety is absolute in its terms, and not conditional, as is the engagement of an indorser. He is directly, and not contingently liable to the creditor. The latter has a direct remedy against both principal and surety. If the obligation is joint and several, he has an undoubted right to proceed against the surety alone. It is no part of his contract that he will take active measures to collect the debt. The duty to act rests with the debtors. All that the surety has the right to require of the creditor is, that no affirmative act shall be done that will operate to his prejudice; such as an extension of the time of payment by a binding arrangement with the principal, or the giving up of other securities for the payment of the same debt. The law affords the surety a sufficient protection. He can pay the debt the moment it falls due, which is doing no more than he agreed to do, and immediately resort to the principal for reimbursement. Upon payment of the debt, he may, in equity, be subrogated to all the rights of the creditor. He may also, in the first instance, go into equity to compel the specific performance of the contract by the principal. On this subject, it is said, in Story's Equity Jurisprudence, in section 639: 'If the debt is due, and the creditor does not choose to call upon the debtor for payment, the surety may come into equity by a bill against the creditor and the debtor, and compel the latter to make payment of the debt, so as to exonerate the surety from his responsibility. In cases of this sort, there is not, however, any duty of active diligence incumbent on the creditor. It is for the surety to move in the matter.'" *(Taylor v. Samuel Beck, 13 Ill. 376.)*

"By the exercise of diligence, the promisor can have full protection by paying the debt himself at maturity, and bringing his own action against the debtor, or by bringing a proceeding in equity against the principal to compel him to pay the creditor, and he should not be per-

mitted by a mere 'request' to shift upon the creditor the burden of a greater degree of diligence than he himself is willing to exercise in his own behalf. Such is the holding of the great preponderance of authority in this country." Stearns on the Law of Suretyship, page 174; *Moore v. Topliff*, 107 Ill. 241; *Philadelphia & Reading Ry. v. Little*, 41 N. J. Eq. 519, 7 Atl. 356; *Miller v. Stout*, 5 Del. Ch. 259; *Bellows v. Lovell*, 5 Pick. [Mass.] 307; *Dane v. Corduan*, 24 Cal. 157, 85 Am. Dec. 53; *Bull v. Allen*, 19 Conn. 101; *Ingels v. Sutliff*, 36 Kan. 444, 13 Pac. 828; *Eaton v. Waite*, 66 Me. 221; *Gray v. Farmers' Bank*, 81 Md. 631, 32 Atl. 518; *Inkster v. First Bank*, 30 Mich. 143; *Smith v. Freyler*, 4 Mont. 489, 1 Pac. 214, 47 Am. Rep. 358; *Quillen v. Quigley*, 14 Nev. 215; *Harris v. Newell*, 42 Wis. 687; *Wilds v. Attix*, 4 Del. Ch. 253; *Thompson v. Bowne*, 39 N. J. Law, 2; *First Bank v. Homesley*, 99 N. C. 531, 6 S. E. 797; *Snow v. Horgan*, 18 R. I. 289, 27 Atl. 338; *Benedict v. Olson*, 37 Minn. 431, 35 N. W. 10.)

"As between creditor and surety, it is the surety's business to see that the principal pays. The creditor's chief purpose in requiring a surety is to avoid the necessity of resorting to legal remedies against the principal—to escape the vexation and expense of litigation, and cast that burden upon another. The surety's contract is that he will himself pay the note when it falls due, and not that he will pay it in case the payee or holder cannot by due diligence enforce payment by the principal. If he performs his contract, the creditor has neither cause nor opportunity to institute legal proceedings." (*Morrison v. Citizens' Nat. Bank*, 65 N. H. 253, 20 Atl. 300, 9 L. R. A. 282, 23 Am. St. Rep. 39.)

"Mere omission to sue the principal, however long continued and however prejudicial to a surety, does not release him from his obligation of suretyship. Brandt on Suretyship and Guaranty, sec. 296; *Ray v. Brenner*, 12 Kan. 105; *Buchanan v. Bordley*, 4 Har. & McH. (Md.) 41, 1 Am. Dec. 387; *Fulton v. Matthews*, 15 Johns. (N. Y.)

433, 8 Am. Dec. 261.   A surety may, in equity, compel action to be brought by the creditor against the principal debtor, provided he indemnify the creditor 'against loss from a fruitless suit against the principal.'   Brandt on Suretyship and Guaranty, sec. 205; *King v. Baldwin*, 17 Johns. (N. Y.) 384, 8 Am. Dec. 415.   * * *   'The great majority of cases on the subject hold, in the absence of any statutory provision, that if after the debt is due the surety request the creditor to sue the principal, who is then solvent, and the creditor fails to do so, and the principal afterwards becomes insolvent, the surety is not thereby discharged.   The ground upon which these decisions rest is that the principal and surety are both equally bound to the creditor, who may have taken a surety in order that he might not have to sue the principal.   If the surety desires a suit brought against the principal, he may himself pay the debt and immediately sue the principal.   The contrary doctrine is an innovation and was unknown to the common law.'   Brandt on Suretyship and Guaranty, sec. 208; *Taylor v. Beck*, 13 Ill. 376; *Bellows v. Lovell*, 5 Pick. (Mass.) 307; *Leavitt v. Savage*, 16 Me. 72; *Bull v. Allen*, 19 Conn. 101; *Baker v. Marshall*, 16 Vt. 522 [42 Am. Dec. 528]; *Davis v. Huggins*, 3 N. H. 231; *Croughton v. Duvall*, 3 Call. (Va.) 69; *Carr v. Howard*, 8 Blackf. (Ind.) 190; *Halstead v. Brown*, 17 Ind. 202; *Nichols v. McDowell*, 14 B. Mon. 6; *Dillon v. Russell*, 5 Neb. 484; *Inkster v. First N. B.*, 30 Mich. 143." *(Cope v. Smith*, 8 Serg. & R. [Pa.] 110, 11 Am. Dec. 583, 589; *Ewing v. Williams*, 19 Ky. Law Rep. 319, 89 S. W. 843; *Hall v. Hoxsey*, 84 Ill. 616; *English v. Seibert*, 49 Mo. App. 563; *Vance v. English*, 78 Ind. 80; *Fanning v. Murphy*, 126 Wis. 538, 105 N. W. 1056, 4 L. R. A. [N. S.] 666, 110 Am. St. Rep. 946, 5 Ann. Cas. 435; *Schroeppell v. Shaw*, 3 N. Y. 446; *Freehold Nat. Bkg. Co. v. Brick*, 37 N. J. Law, 307; *Clopton v. Spratt*, 52 Miss. 251; *Lancaster v. Johnson*, 5 Ky. Law Rep. 244; *Howe Mch. Co. v. Farrington*, 82 N. Y. 121.)

In *Gray v. Farmers' National Bank,* 81 Md. 631, 32 Atl. 518, where it was claimed that the surety urged upon the creditor that he should realize upon the security, and he agreed to do so, but delayed for a very considerable period, the court said:

"Stating the proof in its strongest aspect against the bank, its action amounted to no more than inaction or passive delay; and, when that is the case, there is no impairment of the creditor's right to resort to the surety. * * * If the surety desires to expedite payment, he may pay the debt, and by that means put himself in the place of the creditor, or he may call on the creditor, by the aid of a court of equity, to proceed against the debtor, upon giving the proper indemnity against costs and delay."

In *Myers v. Farmers' State Bank,* 53 Neb. 824, 74 N. W. 252, it was held that:

"Where the maker of a note secures its payment by a chattel mortgage, and the payee of the note indorses and delivers it to a third party, his failure to seize the mortgaged property for the purpose of satisfying the note, even though requested so to do by the sureties of the maker, will not discharge them."

In *Bank of Montreal v. Davy,* 21 U. C. C. P. 179, it was held that the creditor was not required, on the demand of the surety, to sell a vessel mortgaged as collateral security, under the power of sale in the mortgage.

In the case of *Bailey Loan Co. v. Seward et al.,* 9 S. D. 236, 69 N. W. 58, it does not appear that the creditor put it in the power, or offered to put it in the power, of the sureties to pursue the remedies of the creditor as against the principal.

We are therefore of the opinion that the holdings of the trial court were erroneous, and that for the reasons

stated the judgment of the county court of Le Flore county must be reversed, and the cause remanded, with instructions to said court to set aside said judgment and to render judgment against the plaintiff, M. C. Lowrey, and in favor of the defendant National Bank of Poteau, Oklahoma, with costs.

By the Court: It is so ordered.