## GREGG v. OKLAHOMA STATE BANK OF ADA.

No. 8615—Opinion Filed Feb. 4, 1919.

Rehearing Denied March 25, 1919.

(179 Pac. 613.)

(Syllabus.)

1. **Pleading—Demurrer to Answer—Construction of Pleadings.**

On demurrer to an answer as defective, because the same fails to state facts sufficient to constitute a defense, the pleading must be liberally construed, and all its allegations for the purpose of the demurrer taken as true. And such demurrer should be sustained where, admitting all the facts in the answer to be true, they constitute no defense to the cause of action stated in the petition.

2. **Principal and Surety—Action Against Principal—Statute.**

A surety, by verbal demand upon his creditor, cannot compel the creditor to proceed against the principal, under section 1058, Rev. Laws 1910.

3. **Principal and Surety—Extensions.**

Where a note contained the stipulation, "and all the several names, sureties, and indorsers thereof waive appraisement, notice of extension, nonpayment, and protest, and agree that any extension of time made herein, or renewal thereof, shall not affect their liability, whether they have notice of such extension or renewal or not," indicated that any one of an indefinite number of extensions was intended.

Error from County Court, Pontotoc County; I. M. King, Judge.

Action by Oklahoma State Bank of Ada against A. M. Gregg. Demurrer to defend-

ant's amended answer sustained, and default judgment against defendant, motion for new trial overruled, and defendant brings error. Affirmed.

Robert Wimbish and W. C. Duncan, for plaintiff in error.

J. F. McKeel and B. H. Epperson, for defendant in error.

PITCHFORD, J. This action was commenced in the county court of Pontotoc county, on the 18th day of May, 1915, by defendant in error filing its petition against the plaintiff in error, alleging that on June 1, 1911, plaintiff in error, together with R. S. Tobin, made, executed, and delivered his promissory note in writing. Service of summons was had, and in due time plaintiff in error filed his answer, acknowledging the due execution of the note sued on, but stating that he was surety for one R. S. Tobin, which fact was well known to the defendant in error. Various motions were filed and disposed of, and on the 5th day of February, 1916, the cause coming on to be heard on the demurrer of the defendant in error to the third amended answer of the plaintiff in error, the demurrer was sustained in toto. After sustaining the demurrer, and on the same day, the court, over the objection of plaintiff in error, adjudged plaintiff in error in default, and rendered judgment for the amount of the note and interest, heard evidence on the amount of attorney's fees, and rendered judgment thereon. No jury was impaneled. The plaintiff in error duly excepted to the action of the court in sustaining the demurrer and declaring plaintiff in error in default and in taking evidence as to attorney's fees. Motion for new trial was in due time filed, overruled, and exceptions noted. While the plaintiff in error in his motion for a new trial complains of various errors, we deem it necessary to refer only to the fifth assignment, which is as follows:

"For error of the court in sustaining a demurrer to the defendant's third amended answer."

The answer alleges that after the maturity of the note payment was at various times extended without the consent and over the protest of plaintiff in error; that the defendant in error requested the plaintiff in error to execute a new note extending the time of payment; that he refused, and again demanded that proceedings be instituted against the principal; that the defendant in error failed to proceed against the principal, and again extended time of payment over the protest of the plaintiff in

error; that the plaintiff in error orally requested that the defendant in error proceed against the principal, and was informed that it was not necessary to sue; that property and moneys belonging to the principal would be under the control and in the possession of the defendant in error, and that sufficient thereof would be applied toward the payment of the note, that funds in excess of the amount due on the note were so received; that at the date of the promise the principal was possessed of sufficient property within the jurisdiction of the court; that when the plaintiff in error learned that the defendant in error had failed to apply the funds as promised, the plaintiff in error again called attention of the officers of the bank to the fact that the principal still had sufficient property in Pontotoc county out of which collection could be made.

The question for this court to decide is: Did the answer filed by the plaintiff in error present any fact which would constitute a defense to the petition of the defendant in error? If it did, then error was committed in sustaining the demurrer. The law in this jurisdiction seems to be well settled that the payee of a note is not required to proceed against the principal upon an oral request of the surety. In the case of the National Bank of Poteau v. Lowrey, 57 Okla. 304, 157 Pac. 103, this principle appears to be thoroughly settled, where it is stated that a surety, by verbal demand upon his creditor, cannot compel such creditor to proceed against the principal under section 1058, Rev. Laws 1910, making it optional with plaintiff as to which one of the parties to a promissory note he will sue; quoting Palmer v. Noe, 48 Okla. 450, 150 Pac. 462.

The answer acknowledges the execution of the note sued on, together with all the terms and provisions of the same. The note contains this provision:

"And all the several names, sureties, and indorsers thereof hereby waive appraisement, notice of extension, nonpayment, and protest, and agree that any extension of time made hereon, or renewal hereof, shall not affect their liability, whether they have notice of such extension or renewal or not."

Plaintiff in error claims that he was discharged from liability by reason of the note being extended by the bank at various times over his protest, and calls our attention to the case of Kremke v. Radamaker et al., 60 Okla. 138, 159 Pac. 475. The provision in the note therein was something like the provision in the note in the instant case, being as follows:

"The makers, indorsers, and guarantors waive presentment, notice of nonpayment, protest and notice of protest, diligence in bringing suit against any party thereto, and consent that the time of payment be extended without notice thereof."

In the opinion delivered by Hooker, C., the following language is used:

"From these authorities above quoted, we are of the opinion that the law is conclusively established that, although by the provisions of the note an extension of time may be waived, or more than one extension may be authorized, yet it must clearly appear from the instrument itself that such was the case. By an examination of the note in question it is apparent that the language used was intended to apply only to one extension of the time of payment and no more. Hence, if more than one extension of time were given, then the plaintiff in error would be entitled to be discharged unless he consented thereto. Upon this question of consent the lower court made no finding of facts, but expressly held that it was unnecessary for plaintiff in error to have had any notice of such extension. The court finds from this evidence that the plaintiff in error was the surety of Marth. That being true, the plaintiff in error must have consented to an extension of time beyond that expressed in the note, and, if he had no notice thereof, he is released from obligation. * * *"

Under the authorities on this question, we do not think that we would be justified in extending the rule further than has been done in the case of Kremke v. Radmaker, supra. In that case, by an examination of the record, we find the note was to mature two years from the date thereof. The parties resided in different states. The Commissioner, in delivering his opinion, was careful to state that "by an examination of the note in question it is apparent that the language used was intended to apply to only one extension of the time of payment and no more." It will be observed that the provision as to the extension of payment of the note in the case at bar is that the parties liable thereon agree that any extension of time made thereon shall not affect their liability, whether they have notice of such extension or not.

The case of Pioneer Const. Co. et al. v. The First State Bank, 60 Okla. 123, 158 Pac. 894, construes the following provision contained in the note therein sued on:

"The indorsers, guarantors, and assignors severally waive presentment for payment, protest, and notice of protest for nonpayment of this note, and all defense on the ground of any extension of time of its payment that may be given by the holder or

holders, them or either of them, or to the makers thereof."

We quote from the opinion as follows:

"Under this clause * * * the use of the word 'any' before 'extension' indicates that one or more extensions of the time of payment was contemplated by the parties. * * * In the case of Wimebago Co. State Bank v. Hustel, 119 Iowa, 115, 93 N. W. 70, it was held that: "Where a note contained a stipulation that all defense on the ground of any extension of the time for payment was waived. the use of the word 'any' before 'extension' indicated that any one of an indefinite number of extensions was intended."

From the authorities cited, we conclude that the terms of the note in the case at bar contemplated an indefinite number of extensions. This construction works no hardship or injustice as against a surety in any case. Section 1050, Rev. Laws 1910, defines a surety to be "one who, at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor." The surety becomes liable for the accommodation of the principal. He is supposed to know the terms and conditions of the paper he signs as to the time of payment, the rate of interest, waiver of notice of protest, extension of payment, etc. Knowing all this, he should not be heard to complain that the payee was indulgent with the principal by doing the very thing the surety authorized done. Under the statutes of Oklahoma the surety is protected in all his remedies. He may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden. He may compel his principal to perform the obligation when due. If the surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses, and upon satisfying the obligation of the principal, he is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended. Sections 1058, 1059, and 1060, Rev. Laws 1910. The record fails to disclose that the plaintiff in error was in any way prevented from employing his legal remedies, or that he was prejudiced by the omission of the creditor.

The answer states that after plaintiff in error learned that the rents had not been applied to the payment of the note as promised by the creditor, the principal still had sufficient property in Pontotoc county out of which the collection could be made. We find in the case of National Bank of Poteau v. Lowrey, supra, the court quotes with approval the following, taken from the opinion in the case of Taylor v. Samuel Beck, 13 Ill. 376:

"There is no sound reason for permitting a surety to discharge himself by requesting the creditor to proceed against the principal. The undertaking of a surety is absolute in its terms, and not conditional, as is the engagement of an indorser. He is directly and not contingently liable to the creditor. The latter has a direct remedy against both principal and surety. If the obligation is joint and several, he has an undoubted right to proceed against the surety alone. It is no part of his contract that he will take active measures to collect the debt. The duty to act rests with the debtors. All that the surety has the right to require of the creditor is that no affirmative act shall be done that will operate to his prejudice, such as an extension of time of payment by a binding arrangement with the principal, or the giving up of other securities for the payment of the same debt. The law affords the surety a sufficient protection. He can pay the debt the moment it falls due, which is doing no more than he agreed to do, and immediately resort to the principal for reimbursement. Upon payment of the debt, he may, in equity, be subrogated to all the rights of the creditor. He may also, in the first instance, go into equity to compel the specific performance of the contract by the principal. On this subject it is said in Story's Equity Jurisprudence, in section. 639: 'If the debt is due, and the creditor does not choose to call upon the debtor for payment, the surety may come into equity by a bill against the creditor and the debtor, and compel the latter to make payment of the debt, so as to exonerate the surety from his responsibility. In cases of this sort there is not, however, any duty of active diligence incumbent on the creditor. It is for the surety to move in the matter.' "

From a careful consideration of the answer we are unable to find wherein the same states any fact or facts that would constitute a defense to the allegation of the petition. Smith-Wogan Hdwe. & Impl. Co. v. Moon Buggy Co., 26 Okla. 161, 108 Pac. 1103. We are therefore constrained to hold that the trial court committed no error in sustaining the demurrer.

Judgment of the lower court is affirmed.

All the Justices concur.