David W. Witter et al., Appellees, v. Massachusetts Bonding & Insurance Co., Interpleader, Appellee; Ed McClelland, Cross-petitioner, Appellant.

No. 41670.

April 4, 1933.

James F. Page, for appellant.

Frank G. Ryan, Royal & Royal, and Comfort & Comfort, for appellees.

Mitchell, J.—Victor J. Silliman Company, Inc., is a corporation with its principal place of business at Des Moines, Iowa, and

was registered as a dealer under the provisions of chapter 10 of the Acts of the Forty-third General Assembly. In compliance with the provisions of chapter 10 of the Acts of the Forty-third General Assembly, Victor J. Silliman Company, Inc., delivered to the secretary of state a bond executed by it as principal, and the Massachusetts Bonding & Insurance Company as surety, in the penal sum of $5,000. The said bond was given in compliance with the statute, section 8581-c14, 1931 Code of Iowa.

This action was commenced to enjoin the defendants, except the Massachusetts Bonding & Insurance Company and C. P. M. Allen, as receiver for Victor J. Silliman Company, Inc., from proceeding with actions at law commenced in the district court of Iowa in and for Polk county and in the municipal court of the city of Des Moines, Polk county, Iowa, against the Massachusetts Bonding & Insurance Company, Victor J. Silliman Company, Inc., and C. P. M. Allen, receiver for Victor J. Silliman Company, Inc., and also praying that the dealers' bond given by Victor J. Silliman Company, Inc., principal, and Massachusetts Bonding & Insurance Company, surety, in the amount of $5,000, be declared to be a trust fund for the benefit of plaintiffs and all other claimants against Victor J. Silliman Company, Inc., who would join in the action, and also asking that judgment be entered against the Massachusetts Bonding & Insurance Company in the amount of the penalty of the bond.

The plaintiffs and part of the defendants in this action were purchasers of Cities Service stock and other securities from Victor J. Silliman Company, Inc., a dealer whose office was located at Des Moines, Iowa. The said Victor J. Silliman Company, Inc., failed to account for moneys received by it from several investors in securities, and suits were brought against said company and the Massachusetts Bonding & Insurance Company, the surety on the bond. On June 6, 1931, Victor J. Silliman Company, Inc., went into receivership, and C. P. M. Allen was appointed receiver. The Massachusetts Bonding & Insurance Company filed its answer to the petition of plaintiffs, claiming that, if liable on the bond, its limit of liability was $5,000, and joined in the prayer for an injunction. At a hearing before the court the injunction was denied. The Massachusetts Bonding & Insurance Company then filed its interpleader, paid the $5,000, the penalty of the bond, into court, and asked the court for an order directing all claimants against Victor J. Silliman Company, Inc., to come into court, prove their claims,

and share pro rata in the proceeds of the $5,000 bond. The court made its order as requested and appointed Frank J. Walrath referee to take proof of the claims.

Edward McClelland, one of the defendants in the lower court, and appellant here, filed his answer and cross-petition to the interpleader of the Massachusetts Bonding & Insurance Company, denying that the Massachusetts Bonding & Insurance Company was liable only to the extent of $5,000 on all claims, and contending that his claim of $2,004.88 should be allowed in full as against the Massachusetts Bonding & Insurance Company, rather than participate on a pro rata basis with the other claimants. The referee took proof of the claims and made his report, and at a subsequent hearing the trial court found that all claimants, consisting of some fifty in number, were entitled to have their claims allowed in a total sum in excess of $37,000. The court further ordered the clerk to distribute the proceeds of the $5,000 which had been turned over to him under bill of interpleader, after paying the court costs and referee's fees in full, among all claimants, amounting to in excess of $37,000, in proportion to the amount of their respective claims.

Edward McClelland, one of the defendants, feeling aggrieved by the ruling of the court in its decree, appealed from the decision of the lower court to this court.

So this court is confronted with the question of whether or not the appellant is entitled to have his claim established in the sum of $2,004.88 in full as against the surety bond in question, or whether he should be required, under the provisions of the statute and the provisions of the bond, to share pro rata with the other creditors as against the penal sum of the bond, namely, $5,000. In other words, should section 8581-c14 of the 1931 Code be interpreted to mean that a surety company executing a bond, under the provisions of said section, shall be held liable in excess of the penal sum of $5,000, as provided in the second paragraph of said section for all claims that may be filed, or should said statute be interpreted to mean that the surety company is liable for each claim up to $5,000, thereby extending the liability of the surety company in excess of $5,000 where the total claims aggregate a sum in excess of $5,000? In the case at bar it would extend the liability of the bonding company to an amount in excess of $37,000, that being the amount of the claims which were filed in this cause and allowed.

Section 8581-c14 of the 1931 Code is as follows:

"Any bond required by section 8581-c11 shall be conditioned that the dealer shall properly account for any moneys or securities received from or belonging to another and shall pay, satisfy and discharge any judgment or decree that may be rendered against such dealer in a court of competent jurisdiction in a suit or action brought by a purchaser of securities against such dealer in which it shall be found or adjudged that such securities were sold by the dealer in violation of this chapter or that such purchaser was defrauded in the sale of such securities. Such bond may be drawn to cover the original license and any renewals thereof.

"Every such bond shall run in favor of the state of Iowa for the use and benefit of any purchaser of securities sustaining damages as a result of any breach of the conditions thereof, in the sum of five thousand dollars and shall be in such form consistent with the provisions hereof as the secretary of state may prescribe, and shall be executed with surety by a surety company authorized to do business in this state. In suits against the surety upon such bond it shall not be necessary to join such dealer as a party.

"Banks or trust companies under the supervision of this state or of the United States which would otherwise be required under the provisions of this chapter to execute as dealers the bond required herein may execute said bond without surety.

"One or more recoveries upon any such bond shall not vitiate the same but it shall remain in full force and effect, but no recoveries from the surety upon any such bond shall ever exceed the full amount of the same, and upon suits being commenced in excess of the amount of same the secretary of state may require additional bond, and if the same is not given within ten days the secretary of state may revoke the registration of such dealer.

"Any person injured by any breach of the bond given by any dealer may sue on the bond of such dealer in any proper court of the state of Iowa of competent jurisdiction for the recovery of damages, not exceeding the amount of the bond, sustained in consequence of such breach, but no such action shall be brought after two years after the accruing of the cause of action thereon."

It will be noticed from the second paragraph of the above statute that the bond required is in the amount of $5,000. In the next paragraph the secretary of state is given the right to require

additional bond upon suits being commenced in excess of the amount of same.

If the legislature meant what the appellant claims, why did it insert the paragraph in the statute giving the secretary of state the right to require an additional bond upon suits being commenced in excess of the amount of same? And the statute further provides that, if the party does not furnish the additional bond when required by the secretary of state, the secretary of state may revoke the registration of such dealer.

The next paragraph provides:

"Any person injured by any breach of the bond given by any dealer may sue on the bond * * * for the recovery of damages, not exceeding the amount of the bond."

It seems to us that the language of the section just quoted leaves no doubt as to what was the intent of the legislature, that no recovery from the surety on such bond shall ever exceed the full amount of the $5,000.

The appellant bottoms his case upon the case of Salo v. Pacific Coast Casualty Co., 95 Wash. 109, 163 P. 384, 386, L. R. A. 1917D, page 613. This was a decision by a divided court in the state of Washington. In this case the court in its decision lays great stress upon the fact that there is no provision in the act requiring the filing of an additional bond. The court says:

"Section 2 of the act requires that a surety bond shall be kept on file in the office of the secretary of state. There is no provision in the act requiring the filing of an additional bond when the security may be impaired. If the bond is exhausted by the first judgment against it, to the extent of $2,500, then it would be possible for the owner of a motor-propelled vehicle to carry passengers for hire with a bond on file in the office of the secretary of state upon which there could be no liability, because the penalty had already been exhausted by the previous judgment. Such a result was certainly not intended by the legislature."

Our statute, however, provides as follows:

"Upon suits being commenced in excess of the amount of same the secretary of state may require additional bond, and if the same is not given within ten days the secretary of state may revoke the registration."

The language of our statute differs materially from that involved in the Salo case. The Washington statute provided, "but the recovery against the surety shall be limited to the amount of the bond," while our statute provides, "but no recoveries from the surety upon any such bond shall ever exceed the full amount of the same."

The author of the annotation in L. R. A. 1917D, page 617, states, in substance, that the only case that supports the Salo case is the dissenting opinion in the Arkansas case of Albie v. Jones, 82 Ark. 414, 102 S. W. 222, 12 Ann. Cas. 433.

"And aside from the correctness of the decision from a grammatical point of view, the conclusion reached by the majority of the court finds judicial support in the dissenting view taken by McCulloch, J., in the Arkansas case of Albie v. Jones (1907), 82 Ark. 414, 102 S. W. 222, 12 Ann. Cas. 433, which is set out and discussed infra. However, from a suretyship point of view, if the decision in the Salo case were universally followed it would seem that the obtaining of sureties would be rendered difficult, if not impossible, because of the absolute uncertainty which would necessarily exist as to the extent of liability on a bond. And it would also seem that if the legislature had actually intended the bonds given under the statute to have the force and effect decreed by the majority opinion, it could have used more appropriate terms than 'every person' and 'the recovery,' when in fact it meant each person and each recovery taken separately one by one as held by the court."

In the case of Leggett v. Humphreys, 21 How. 66, 75, 16 L. Ed. 50, the court, discussing the liability of a surety on a bond, independently of the Mississippi statute which really controlled the actual decision, arrived at the conclusion that the surety on a bond generally cannot be held liable beyond the penalty of the bond. In reaching this conclusion, the court laid down the following controlling principles:

"In judging of the character or sufficiency of the defense [of payment of the full amount of the bond in a previous action thereon] alleged for the exemption of the appellee, there should be taken as a guide the rule, which is perhaps without an exception, that sureties are never held responsible beyond the clear and absolute

terms and meaning of their undertakings;" and that "presumptions or equities are never allowed to enlarge or in any degree to change their legal obligations" of a surety, or in other words, that "the liability of the surety cannot be extended by implication."

In the case of Bothwell v. Sheffield, 8 Ga. 569, it is expressly held that sureties on a sheriff's bond, after recoveries have been had in the amount of the bond, may protect themselves against further liability by pleading such fact in any pending or future suit on the bond.

In the case of State ex rel. Walker v. Ford, 5 Blackf. (Ind.) 392, it was held that in a suit on a bond of a justice of the peace, a plea of a former recovery by the state on the relation of different persons for more than the penalty of the bond was good in a subsequent suit on such bond, the court refuting the contention that the plea was bad on the ground that the liability of the sureties on the bond was not limited by the amount of the penalty named in it.

It was further held, in the case of Bailey v. McAlpin, 122 Ga. 616, 50 S. E. 388, that the sureties on a county administrator's bond, which is for the benefit of any and all estates in his hands, are liable to successive suits in favor of different estates until they have paid out a sum equal to the full penalty of the bond, but that when this is done they are no longer liable to any one on account of the conduct of the county administrator.

In the case of Southern Surety Co. v. Bender, 41 Ohio App. 541, 180 N. E. 198, 200, an action was brought by a man and his wife against a prohibition agent who had furnished a bond in the sum of $2,000 to the state as principal, and a Metropolitan Casualty & Insurance Company as surety, and a police officer who had executed a bond as principal, and the Southern Surety Company as surety, for the penal sum of $1,000. The husband brought an action for damages resulting from a raid by the government and police officers and he secured a judgment in the sum of $3,000. The wife started a separate action and she got a judgment against both government and police officer in the sum of $2,000. The husband procured his judgment first and same was affirmed in the Court of Appeals. The surety companies paid the judgment of $3,000, which was the total amount of the penal sum of their bonds. The wife proceeded to the Court of Appeals with her judgment for $2,000. The question, there-

fore, before the court was whether the companies having paid on a prior judgment the full amount of the penalty named in the bonds, are now discharged from further liability, and, if they are not discharged, whether their liability should be prorated between the judgments, or whether, if liable, they are liable for the full amount of the judgment of the wife as well as the husband.

Section 11242 of the General Code of Ohio, relating to the liability of a surety in a suit on a bond, closes in the following language:

"A judgment for one delinquency shall not preclude the same or another person from bringing an action on the instrument for another delinquency."

The court said:

"The defendant contends that by virtue of this language a surety remains liable in succeeding suits on a bond, notwithstanding he may have paid on some former judgment the full amount of the penalty named in the bond. This court cannot so construe the statute. It is true that the purpose of the enactment was to make the surety liable in successive actions; but the limit of liability assumed by the surety in official bonds of this character is the penal sum named in the bonds. Any other construction would result in great injustice and render it practically impossible to obtain sureties.

"It is also true that the statute must be read into and construed as a part of the bond, but nothing in the statute or in the bond indicates that the surety obligated itself to one party, or to separate parties, for any amounts which, in the aggregate, exceed the penal sum named in the bond. Any different holdings are based upon the peculiar phraseology of the statute or of the bond. If Shylock, the prince of usurers, who was obligee in a bond, could say, 'I stay here on my bond,' certainly these plaintiffs, who are merely sureties, would have the same right.

"Accordingly, it was held in Squires v. Miller, 173 Mich. 304, 138 N. W. 1062, 43 L. R. A. (N. S.) 76, that the surety on a saloon-keeper's bond under the Civil Damage Act of that state remained liable for successive recoveries until he had paid the face of the bond, but that his liability could not exceed the penalty named in the bond. The same holding was made in Merrinane v. Miller, 157 Mich. 279, 280, 118 N. W. 11, 25 L. R. A. (N. S.) 585. * * *

1330

"In the case of Bradford v. National Surety Co., 207 Ala. 549, 93 So. 473, it was held that a surety on a deputy sheriff's bond is entitled to pay the amount required to satisfy the first judgment rendered thereon, and that he could not successfully defend a second suit brought on the same bond based on the fact that judgment had been recovered in the first action, unless he had in fact satisfied such former judgment. It is significant that in the case just cited the court also held that the surety, having satisfied the first judgment, could bring an action to enjoin the collection of a subsequent judgment obtained prior to the satisfaction of the first judgment, and that there could be no prorating of the liability on the several claims. This latter case was cited with approval in National Surety Co. v. Graves, 211 Ala. 533, 101 So. 190."

Thus it appears that by the great weight of authority, a surety company cannot be held liable for a greater amount than that specified in the bond, and that one recovery of the full amount constitutes a defense against all pending or future suits, even though such suits are based on distinct wrongful acts of the party giving the bond. Clearly it seems to us. under the statute in Iowa, which limits the liability to $5,000, which gives to the secretary of state a right, in case the secretary of state desires when there are suits commenced in excess of the bond, to require an additional bond, and which gives to the secretary of state the right to revoke the registration of such dealer if such dealer does not furnish additional bond, that it was the intention of the legislature that no recovery from the surety on such bond shall ever exceed the full amount of $5,000.

The judgment and decree of the lower court is correct, and the same must be, and it is hereby, affirmed.

All Justices concur.

STEVENS and KINTZINGER, JJ., take no part.