WESTERN SURETY COMPANY, a corporation, Plaintiff in Error,

v.

Oren E. CHILDERS, John C. Hubbard, Abba M. Lee, May M'. Walker, S. S. Nossek, Irvey C. Owenbey, Phillips & Strong Engineering Company, Lyle C. Wilson, Defendants in Error.

No. 39304.

Supreme Court of Oklahoma.

March 6, 1962.

As Amended and Dissenting Opinion Filed June 19, 1962.

Hanson & Peterson, Oklahoma City, for plaintiff in error.

Chas. D. Scales, Harry Priest, Harlan Deupree, Cheek, Cheek & Cheek, Sam Hill, V. J. Bodovitz, Oklahoma City, for defendants in error.

WELCH, Justice.

During the year of 1958, Hugh K. Clark obtained a license as a real estate broker from the Oklahoma Real Estate Commission. Western Surety Company executed with said broker its bond in the sum of $1,000.00 as required by statute. Thereafter the eight defendants in error, each separately sued Hugh K. Clark, and Western Surety Company in Common Pleas Court of Oklahoma County, Oklahoma, for funds embezzled. Western Surety Company filed a complaint for interpleader, and joined with it an action for Declaratory Relief, under No. 8267 Civil in the United States District Court for the Western District of Oklahoma, and the actions against Western Surety were continued as to it. In the meantime judgments were rendered against Hugh K. Clark.

On the trial of the case of Interpleader and Declaratory Relief in Federal Court it was called to the attention of the court that the Supreme Court of Oklahoma had not passed upon the liability of the surety in such case. There being some question as to jurisdiction for Declaratory Relief the Federal Court case was dismissed. The cases in Common Pleas Court were then consolidated and certified to the district court of Oklahoma County, Oklahoma. It was stipulated by the parties that trial was only for the purpose of obtaining a Declaratory Judgment fixing the extent of surety's liability on said bond.

The district court entered a judgment finding the Western Surety Company liable to pay not to exceed the sum of $1,000.00 on each of the eight judgments listed. The Surety Company, plaintiff in error, has perfected this appeal from said judgment.

The primary question to be determined is the extent of liability of the Western Surety Company on the bond.

The plaintiff in error, Western Surety Company, contends that the trial court was in error in finding that each claimant was entitled to recover up to $1,000.00. It contends that its liability is limited to the sum of $1,000.00, and if the claims or judgments exceed that sum they must be prorated each receiving his prorata share of $1,000.00.

■ It is a well established rule of law that a surety or bondsman may only be held for the amount stipulated in the bond. 50 C.J. p. 74, Sec. 128; 21 R.C.L. p. 1085, Sec. 127; 72 C.J.S. Principal & Surety § 93, p. 573; Coast Surety Corporation v. White, 14 Cal.App.2d 35, 57 P.2d 951; Wiggins v. Pacific Indemnity Co. 134 Cal.App. 328, 25 P.2d 898; Witter v. Massachusetts Bonding and Insurance Company, 215 Iowa 1322, 247 N.W. 831, 89 A.L.R. 1065, and New Amsterdam Casualty Co. et al. v. Hyde, 148 Or. 229, 34 P.2d 930, 35 P.2d 980.

The bond under consideration was executed October 1, 1957, with an expiration

date of December 31, 1958. It was conditioned that Surety should pay to the extent of $1,000.00 any judgment which may be recovered against principal for loss or damages arising from his activities as Real Estate Broker during the current license year.

■ Since this is a statutory bond, in order to determine the extent of the liability, the provisions of the Act under which the bond is given should be read into and become a part of such bond. Ellsworth v. Hurt, 158 Kan. 232, 146 P.2d 365.

The applicable statute is Title 59 O.S. 1957 Supp. § 848. It requires that as a condition of licensing the real estate broker or agent must file with the real estate commission a surety bond in the sum of $1,000.-00, which bond shall provide that the surety will pay to the extent of $1,000.00 any judgment which may be recovered against such licensee for loss or damages arising from his activities as such real estate salesman or broker.

The bond herein does not appear to be at variance with the statute.

Title 15 O.S.1951 § 373, provides:

"A surety cannot be held beyond the express terms of his contract, and if such contract prescribes a penalty for its breach, he cannot in any case be liable for more than the penalty."

In construing this section along with others, the Federal Circuit Court of Appeals of the Tenth Circuit, in the case of Maryland Casualty Company v. Alford (Okl.) 111 F.2d 388, held a surety was not liable beyond the express terms of its contract, and that its liability was limited by the penal sum named in the bond. See, also Eckles v. Busey, 191 Okl. 644, 132 P.2d 344, and Allen v. Hartford Accident and Indemnity Co., 190 Okl. 313, 123 P.2d 252.

Defendants in error apparently rely on the rule expressed in Salo v. Pacific Coast Casualty Company, 95 Wash. 109, 163 P. 384, L.R.A.1917D, 613, and Paulsell v. Peters, 9 Wash.2d 599, 115 P.2d 708, both of which are Washington cases. The Supreme Court of Washington did not follow the generally accepted rule adopted in most jurisdictions in these two cases. In each one the court held that where more than one claim or judgment existed, the surety was liable on each one to the extent of the amount specified in the bond. It is obvious that the court in the case of Paulsell v. Peters, supra, was following the view already expressed by the same court in Salo v. Pacific Coast Casualty Company, supra. Courts in other jurisdictions have not chosen to follow the views expressed in the Salo case. They have been very critical of it in expressing their views.

■ It has been held by this court that a contract of suretyship should be construed and applied strictly in favor of the surety and without an allowance of any implication against it. New York Casualty Company of New York v. Wallace and Tiernan, 174 Okl. 278, 50 P.2d 176; Enid Concrete Pipe and Stone Co. v. Mann, 174 Okl. 282, 50 P.2d 307; W. S. Dickey Clay Mfg. Co. v. New York Casualty Company of New York, 174 Okl. 281, 50 P.2d 325, and Aetna Casualty and Surety Company v. Tucker, 174 Okl. 343, 50 P.2d 339.

■ We agree with the defendants in error that the statute requiring a bond as a condition of licensing a real estate broker or agent was undoubtedly enacted for the protection of the general public, and should be liberally construed so as to carry out that purpose. However, that liberality of construction should not extend to placing burdens on an obligor that it did not assume in its contract. Recovery on the bond is not the only recourse the general public has against the real estate broker or agent.

The District Court of Appeals, First District, Division 2, California, in the case of Wiggins v. Pacific Indemnity Company, supra, had before it a question almost identical to the one here before us. The provisions of the statute which forced the controversy therein read (St.1923, p. 96, § 9a):

"'* * * Any person injured by the failure of a real estate broker to

perform his duties, or comply with the provisions of this act, shall have the right in his own name to commence such an action against said real estate broker and his sureties for the recovery of any damage sustained by the failure or omission of said real estate broker to perform his duties or either of them, or to comply with the provisions of this act or any of them. It shall be the duty of the real estate commission to see that such bond remains and is kept good.' * * *"

The pertinent provisions of the bond provided that *any* person injured by the failure of such real estate broker to perform such duties shall have the right to maintain an action against the broker and surety for the recovery of *any* damages sustained by the failure or omission of such broker. (emphasis by this court)

It is obvious that both the statute and the bond referred to in that case are very similar to the statute and bond involved in the case here. Especially as to the use of the word "any" which was construed by the trial court to mean "all" or "one or more" and apparently the basis of the trial court's reason for finding as it did in the case here for review.

In the case above referred to the California court further said:

"In this connection we may refer to similar and contemporaneous legislation in order to determine the meaning of the Legislature. With this in mind, we find the general rule relating to the liability of a surety stated in section 2836 of the Civil Code as follows:

" 'A surety cannot be held beyond the express terms of his contract, and if such contract prescribed a penalty for its breach, he cannot in any case be liable for more than the penalty.'

"This principle is recognized in all our decisions. * * * This principle has been applied to other bonds required to be given for the faithful perform-

ance of some obligation of a third party. * * *"

The above section of the California Code is very similar to our statutory provision. Title 15 O.S.1951 § 373, which is referred to in the early part of this opinion.

It is argued by the defendants in error that the Legislature intended for liability to be on all judgments when it provided in the statute for liability on "any judgment." The only support for this argument is the rule of law established by the Supreme Court of the State of Washington, which obviously is not the generally accepted rule followed by courts of other jurisdictions; and the grammatical construction placed upon the word "any" by other courts in construing statutes.

We do not think that the legislative intent should be construed wholly upon the grammatical construction of any one word, but should be construed in a manner which would not be arbitrary, discriminatory and unreasonable.

Should the act be construed to mean that while the required bond purports to be in the penal sum of $1,000.00 and in conformity with the statute which does not require any more than this sum, yet, after recovery for that amount, the obligors shall continue to be liable for other and additional amounts without limit, then the requirement would clearly be unreasonable. No surety could properly be expected to undertake such an indefinite and unlimited responsibility. Therefore such construction of this regulatory statute would defeat the purpose of the legislation intended to regulate the occupation of real estate brokers and agents.

Regulations of occupations which are arbitrary, discriminatory, and unreasonable are beyond the scope of legislation. In re Carlson, 87 Cal.App. 584, 262 P. 792.

Therefore, for the reasons hereinabove stated, we construe Title 59 O.S. 1957 Supp. § 848, to mean that Surety's ag-

gregate liability on this bond shall not exceed the penal sum stipulated therein.

Now we come to the question of determining how the $1,000.00 which constitute surety's liability should be applied to satisfy surety's obligation, since the total of all claims are in excess of $1,000.00.

Where bond is given to protect individual members of public who deal with principal and extent of surety's liability is limited to certain amount and claims are made to surety in excess of penalty on bonds, total penalty should be prorated among claimants. New Amsterdam Casualty Co. v. Hyde, supra.

For the reasons herein stated this cause is reversed and remanded, with directions for the trial court to render judgment in accordance with the views expressed herein.

DAVISON, HALLEY, JOHNSON and JACKSON, JJ., concur.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and IRWIN and BERRY, JJ., dissent.

WILLIAMS, Chief Justice (dissenting).

The question in this appeal is whether the surety on a real estate broker's bond is liable on each judgment against the broker, up to a limit of $1000.00 per judgment, or whether it is liable only in the total amount of $1000.00.

The majority of the members of this Court hold for total liability of not to exceed $1000.00. I do not agree.

The applicable statute is 59 O.S.1961 § 848:

"The Commission shall not issue any real estate broker's license or real estate salesman's license, or a renewal thereof, until the applicant therefor has filed with the Commission a Surety Bond in the sum of One Thousand ($1,000.00) Dollars in a form and with sureties approved by the Commission, which bond shall provide that the obligor therein will pay to the extent of One Thousand ($1,000.00) Dollars any judgment which may be recovered against such licensee for loss or damages arising from his activities as such a real estate salesman or real estate broker."

Webster's New International Dictionary, Second Edition, defines the word "any" as follows:

" * * * all, taken distributively; every; used esp. in assertions and denials with emphasis on unlimited scope."

By 25 O.S.1961 § 25 it is provided that:

"Words used in the singular number include the plural, and the plural the singular, except where a contrary intention plainly appears."

Nothing is said in the statute specifically limiting the operation of the word "any" to *one* judgment. See Maryland Casualty Company et al. v. State Industrial Commission et al., 139 Okl. 302, 282 P. 293.

The construction of the words "any judgment" in 59 O.S.1961 § 848 is of primary importance in deciding this appeal. Do such words mean "any one judgment" or do they refer to "each and every judgment?" In Cravens v. First State Bank of Seminole, Okl., 355 P.2d 1025, in the third paragraph of the syllabus we said:

"A promissory note including in the stipulation an agreement that *any extension* of time made shall not affect liability, indicates that an indefinite number of extensions was intended." (emphasis ours)

In Pioneer Construction Co. v. First State Bank of Oklahoma City, 60 Okl. 123, 158 P. 894 and Gregg v. Oklahoma State Bank of Ada, 72 Okl. 193, 179 P. 613, the words "any extension" were held to be any one of an indefinite number of extensions.

59 O.S.1961 § 846, a part of the statute in question, provides:

"The Attorney General of the State shall render the Commission opinions on all questions of law relating to the interpretation of this Act, * * *."

It was the uncontradicted testimony that the Oklahoma Real Estate Commission provided representatives of defendant surety company with copies of a 1949 opinion of the attorney general of Oklahoma to the effect that it was his opinion that the broker's bond covered every judgment up to the amount of $1000.00; that defendant's representatives were advised in 1950 by the secretary-treasurer of the Oklahoma Real Estate Commission that it was the Commission's opinion that such broker's bond had no limit other than $1000.00 per judgment; that since said time defendant has written at least 60% of all such bonds written in Oklahoma; that defendant submitted to the Commission a proposed continuation certificate; that said certificate was rejected by the Commission because it showed a $1000.00 limitation on the bond. In Oklahoma Real Estate Commission v. National Business & Property Exchange, Inc., 10 Cir., 238 F.2d 606, the Court said:

"It is the general rule that an agency charged with the duty of administering an act is impliedly clothed with power to construe it as a necessary precedent to administrative action."

In Standard Surety & Casualty Company of New York et al. v. State of Oklahoma ex rel. Thilsted et al., 10 Cir., 145 F.2d 605, the Court said:

"It is a rule of wide recognition that in case of uncertainty or ambiguity in a statute weight should be given to the long continued and consistent construction placed upon it by the administrative agency charged with its execution.

"The re-enactment of a statutory provision without material change is persuasive of a legislative recognition and approval of the consistent administrative construction placed upon it."

The majority opinion in this case states that:

"Should the act be construed to mean that while the required bond purports to be in the penal sum of $1,000.00 and in conformity with the statute which does not require any more than this sum, yet, after recovery for that amount, the obligors shall continue to be liable for other and additional amounts without limit, then the requirement would clearly be unreasonable. No surety could properly be expected to undertake such an indefinite and unlimited responsibility."

This argument that a company would not know what premium to charge if it were to be liable to each judgment creditor of a broker is of no legal force. Industry must find the answer to its problems within the limits permitted by the law. If a bonding company cannot ascertain what premium to charge because of unlimited aggregate liability, it may decline to write bonds of the character here involved. The testimony was that copies of the opinion of the attorney general were sent to several companies and there was no evidence that any of such companies including defendant company refused to write such a bond under the conditions as set forth by the attorney general and the commission. It would seem that defendant and other companies writing real estate broker's bonds operate as if they think they know what premiums to charge.

The majority opinion states that it agrees that the statute requiring a bond undoubtedly was enacted for the protection of the public but the practical result of the opinion is to protect only the first person acquiring a judgment against the broker in the amount of $1000.00. Under such opinion, the payment by the surety of $1000.00 exonerates it as to any one else whom the broker may defraud.

It is my position that the surety on a real estate broker's bond is not limited in liability to a total of $1000.00, but that its liability on each and every judgment rendered against the surety is limited to $1000.00 per judgment. To hold otherwise would be to go directly contrary to my interpretation of the plain meaning of the legislative enactment and would deprive persons dealing with brokers of the protection the Legislature clearly intended they should have. Surely the Legislature did not intend to have one benefit for a man first hurt by a

broker and none for those hurt thereafter. Under the majority opinion if in January a broker's surety paid a proper $1000.00 claim under its bond, thereafter those doing business with the broker in the succeeding eleven months would not have the protection of a bond.

I therefore respectfully dissent.